**In re ABBOTT LABORATORIES SECURITIES LITIGATION.**

**No. 92 C 3869.**

United States District Court, N.D. Illinois, E.D.

Nov. 12, 1992.

Jeffrey David Hupert, Johnson & Colmar, Chicago, IL, for plaintiff.

Alan Norris Salpeter, Michael Paul Rissman, Michele Odorizzi, Mayer, Brown & Platt, Chicago, IL, Eric S. Palles, Mark E. Barmak, Abbott Laboratories, Abbott Park, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs bring this class action [1] against Abbott Laboratories ("Abbott"), Duane L. Burnham ("Burnham"), Lael F. Johnson ("Johnson"), and Joy A. Amundson ("Amundson") (collectively "defendants") pursuant to 28 U.S.C. § 1331, section 27 of the Securities Exchange Act of 1934 ("Exchange Act"). 15 U.S.C. § 78aa. Specifically, plaintiffs allege claims arising under §§ 10(b) and 20(a) of the Exchange Act and under Rule 10b–5 promulgated thereunder. 15 U.S.C. §§ 78j(b) & 78t(a), 17 C.F.R. § 240.10b–5. Additionally, plaintiffs allege common law claims of fraud and deceit and negligent misrepresentation. Defendants have moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b), and for Rule 11 sanctions. For the following reasons, we dismiss the complaint in its entirety, but deny defendants' motion for Rule 11 sanctions.

### I. Standard of Review

In considering a motion to dismiss, the court accepts the factual allegations of the complaint as true. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (citing *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990)). Furthermore, unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," a court should not grant a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct.

---

1. Defendants have consented to class certification.

99, 102, 2 L.Ed.2d 80 (1957). *See also Yeksigian,* 900 F.2d at 102 (7th Cir.1990). Accordingly, the court views the well-pleaded complaint's allegations, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff. *See Balabanos v. North Am. Invest. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill. 1988) (citing *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)).

## II. Factual Background

For the purposes of this motion, the facts underlying this dispute are as follows:

Abbott is an Illinois corporation known for its diagnostic equipment and hospital supplies. Recently, Abbott has made a concerted effort to heighten its pharmaceutical profile. Burnham is a Director as well as Chairman of the Board and Chief Executive Officer of Abbott, Johnson is Senior Vice–President, Secretary, and General Counsel, and Amundson is Vice President, Corporate Hospital Marketing.

Named plaintiff Enten purchased Abbott stock on April 22, 1992. Leonard Padlovsky purchased Abbott shares on May 18, 1992, and Loretta Johnson bought stock on June 5, 1992.

On January 31, 1992, Abbott issued a press release announcing that the FDA had approved its new drug, Omniflox, an antibiotic in the quinolone family of drugs. Proclaiming that the market for antibiotics was the "largest and most attractive in medicine," and that "[w]ith Biaxin and Omniflox, we are well-positioned to compete successfully in this marketplace during the 1990's," Abbott launched Omniflox in the United States.[2] In February, 1992, Ferid Murad, the head of research and development for pharmaceutical products, ceased working for Abbott. It is not clear whether the researcher was fired or whether he

resigned, nor have Abbott executives been permitted to discuss his departure.

On April 8, 1992, Abbott issued another press release noting "record sales and earnings," and stating that one of the highlights of the quarter was the introduction of Omniflox in the United States. Following the announcement, Abbott's stock rose approximately $3.00 per share.[3] These earnings were subsequently reported in a 10–Q filing on May 13, 1992.

During the month of April, 1992, the individual defendants each exercised stock options to acquire Abbott stock. At the same time, each defendant sold Abbott shares totalling approximately one-third of their prior holdings in the company. These transactions were reported in Form 4's.

By the end of May, 1992, the FDA had concluded an additional investigation and review of Omniflox and other quinolone drugs. These conclusions apparently revealed that serious side effects from Omniflox were more frequent than among other quinolones. On the night of June 4, 1992, the FDA told Abbott officials that they were prepared to recommend to Health and Human Services Secretary Louis Sullivan that he suspend sales of Omniflox.

After the close of trading on June 5, 1992, Abbott announced that it would voluntarily and immediately withdraw Omniflox from the worldwide market. According to the FDA, this withdrawal was nearly unprecedented, it having been about twenty years since a medication had been pulled from the market for serious side effects.

The day after Abbott's announcement, the company's stock price dropped by $4.125 per share.

## III. Discussion

### A. *Dismissal on 12(b)(6) Grounds*

Abbott claims that this class action does not state a claim for which relief can be granted. We disagree.

---

**2.** Omniflox was already being marketed in eight other countries.

**3.** After the introduction of Omniflox in the United States, but before its withdrawal, there was a

2–for–1 stock split of Abbott shares. In order to provide relevant comparisons, all of our references will reflect the stock split.

To state a violation of Section 10(b) of the Exchange Act and Rule 10b–5, plaintiff must allege 1) that defendant made untrue statements or omitted to disclose material information in connection with the purchase or sale of securities, 2) that plaintiffs relied on these misrepresentations or omissions, 3) that this reliance resulted in injury to plaintiffs, and 4) that defendants acted with an intent to deceive or manipulate. *See Arlington Heights Police Pension Fund v. Poder,* 700 F.Supp. 405, 406 (N.D.Ill.1988). Plaintiffs have alleged that defendants made material omissions regarding Omniflox, that they relied on Abbott's misleading statements, that the stock lost approximately 14% of its value, and that defendants acted with an intent to defraud. Since they have stated a claim, we deny defendants' motion to dismiss under 12(b)(6).

### B. *Dismissal on Rule 9(b) Grounds*

In seeking to dismiss this class action, Abbott also claims that the lawsuit represents a "classic example of an impermissible 'fraud by hindsight' claim," which must be dismissed at the pleading stage for failing to specifically allege how and when defendants must have known that Omniflox would be withdrawn from the market. Def. Memo at p. 1. While this is not a "classic" case of fraud by hindsight, we agree that plaintiffs fail to satisfy the requirements of Rule 9(b).

#### (i) False and Misleading Statements [4]

Plaintiffs' allegations of false and misleading statements stem from Abbott's January 31 and April 8, 1992 press releases and its May 13, 1992 10–Q filing. Plaintiffs contend that in making those statements, Abbott neglected to disclose 1) that the company submitted fraudulent or recklessly prepared tests and reports on Omniflox to the FDA, 2) that there had been dozens of seriously adverse reactions in

Omniflox users, and 3) that the FDA had begun an investigation and review of the drug.[5]

Although they come close, plaintiffs have not pled adequate facts to support these claims. Rule 9(b) requires that plaintiffs seeking to allege fraud must state the circumstances constituting the fraud with particularity. Fed.R.Civ.P. 9(b). This rule is designed, in part, to ensure that defendants are adequately apprised of the conduct which they must defend. *See In re First Chicago Corporation Securities Litigation,* 769 F.Supp. 1444, 1452 (N.D.Ill. 1991). The Seventh Circuit has explained that Rule 9(b) requires plaintiffs to allege "the who, what, when, where, and how" of the fraud. *DiLeo v. Ernst & Young,* 901 F.2d 624, 628 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). Moreover, when a complaint is based on information and belief, as it is here, plaintiffs must set forth the facts on which that information and belief rests. *In re First Chicago,* 769 F.Supp. at 1453. Although plaintiffs have alleged some facts, we do not believe that they are sufficient to support its claim.

First, plaintiffs appear to infer that because Omniflox was eventually withdrawn from the market, Abbott must have engaged in wrongdoing when obtaining FDA approval. Plaintiffs, however, allege no facts to support this inference. Such pleadings are patently inadequate to survive a motion to dismiss under Rule 9(b).

Second, while Omniflox's withdrawal is sufficient to create an inference that at some point prior to June 5, 1992 Abbott knew of the serious adverse reactions to Omniflox, plaintiffs do not plead any facts indicating when Abbott obtained this knowledge. Instead, plaintiffs merely conclusorily assert that Abbott was aware of the reactions prior to April 8 and May 13,

---

**4.** Plaintiffs do not allege in Count I that defendants made unreasonable earnings and revenue predictions. Accordingly, we will not address that issue here. However, we note that plaintiffs' scattered references to such misrepresentations do not indicate who said what to whom and when, and come nowhere near satisfying the particularity requirements of Rule 9(b). *See Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990).

**5.** With respect to the January 31, 1992 press release, plaintiffs only assert that Abbott omitted mention of fraudulent submissions to the FDA.

1992. However, plaintiffs have not alleged facts from which this Court can reasonably infer that Abbott knew of these reactions prior to their press releases or their 10–Q filing.[6]

Finally, plaintiffs have not alleged any facts indicating that it was misleading for Abbott not to disclose the FDA's decision to investigate and review quinolone antibiotics in its press release or 10–Q filing. First, plaintiffs neglect to allege that the FDA began its investigation of the quinolone antibiotics before Abbott issued its press release or filed its 10–Q. Second, and more importantly, plaintiffs fail to allege the purpose or scope of the investigation. Without such allegations, there is no way of knowing whether Abbott knew, or should have known, that the investigation warranted discussion or disclosure. Accordingly, plaintiffs have failed to sufficiently plead facts supporting their claim that Abbott omitted material facts in issuing its press releases and 10–Q statement.[7]

### (ii) Duty to Update

■ Even if Abbott's statements on January 31, April 8 and May 13, 1992 were not false and misleading at the time they were made, plaintiffs claim that defendants had a duty to update the market once Abbott became aware of the concerns about Omniflox. While in general, Rule 10b–5 does not create a duty to speak, *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir.1990), in *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir.1990), the First Circuit stated that "if a disclosure is in fact misleading when made, and the speaker thereafter learns of this, there is a duty to correct it." *Id.* The *Backman* court further noted that "[w]e may agree that, in special circumstances, a statement, correct at the time,

may have a forward intent and connotation upon which parties may be expected to rely," and that "[i]f this is a clear meaning, and there is a change, correction, more exactly, further disclosure, may be called for." *Id.* at 17.

■ Under this standard, there is no duty to update here. First, as explained above, plaintiffs have not alleged sufficient facts to establish that any of Abbott's statements were false or misleading at the time they were made. Moreover, the statements were not forward-looking, hence they did not require updating. The most forward-looking statements made were 1) that "[Omniflox and Biaxin] significantly strengthen [Abbott's] position in the worldwide anti-infective market," and 2) that "[w]ith Biaxin and Omniflox, we are well-positioned to compete successfully in this marketplace during the 1990's." These, however, are not the sort of statements on which investors may be reasonably be expected to rely, nor are they sufficiently particular statements regarding financial projections, future operations, or forecasts of economic performance to warrant updating. *See* 17 C.F.R. § 230.175(c) (describing what constitutes a forward-looking statement). Accordingly, Abbott had no duty to update.[8]

### C. Common Law Claims

Counts II and III of the Complaint state claims of fraud and deceit and negligent representation. Since these claims do not raise any independent federal questions, they must be dismissed. *See Simkunas v. Tardi*, 930 F.2d 1287 (7th Cir.1991) (citing *United Mine Workers v. Gibbs*, 383 U.S.

---

**6.** Although they undoubtedly knew of the reactions prior to named plaintiff Johnson's purchase of stock, that knowledge is only relevant here if Abbott had a duty to update the market. See discussion below.

**7.** Because plaintiffs have failed to adequately plead one of the elements necessary to allege a Rule 10b–5 violation, we need not address plaintiffs' allegations of insider trading, as those allegations were simply designed to establish scienter, one of the other elements of a Rule 10b–5 action.

**8.** Even if there was a duty to update, plaintiffs fail to allege when Abbott had the information required to make further disclosures necessary. Moreover, plaintiffs do not set forth sufficient facts from which to draw an inference that Abbott was aware of Omniflox's dangers prior to April 22, 1992—when Enten purchased stock—or prior to May 18, 1992—when Padlovsky purchased stock. Without these more particular allegations, plaintiffs fall short of the requirements of Rule 9(b).

**1320**

715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

## D. *Rule 11 Sanctions*

### (i) Insider Trading Allegations

■ Under Rule 11 of the Federal Rules of Civil Procedure, an attorney or party is required to sign every paper presented to the district court. That signature constitutes a certificate

> that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law....

Fed.R.Civ.P. 11. Defendants claim that plaintiffs' allegations of insider trading were not well grounded in fact and ask this Court to impose Rule 11 sanctions on plaintiffs. However, because selling suspicious amounts of securities at suspicious times may establish scienter,[9] and because plaintiffs did, in fact, sell large amounts of Abbott stock during the class period, their allegations of insider trading are grounded in fact. Although we do not approve of plaintiffs' selective editing of the Form 4's, we do not believe plaintiffs' allegations of insider trading warrant sanctions.

### (ii) Lack of Reasonable Inquiry

■ Additionally, defendants claim that plaintiffs, in their rush to the courthouse, filed a complaint based on information and belief despite the fact that this circuit requires such complaints to plead particular facts upon which the information and belief is founded. Defendants ask this court to impose sanctions in order to discourage such conduct.

Although plaintiffs did, in fact, file a complaint on information and belief, and while we believe that plaintiffs failed to plead their claim with sufficient particularity under Rule 9(b), that does not necessarily mean that plaintiffs have disregarded governing law. *DiLeo* does not, as the defendants suggest, stand for the proposition that filing based on information and belief is impermissible. Moreover, plaintiffs have alleged facts supporting their information and belief.[10] Accordingly, we do not find the kind of callous disregard for governing law that justifies sanctions.[11] *See Allison v. Dugan,* 951 F.2d 828, 834 (7th Cir.1992).

### IV. Conclusion

For the foregoing reasons we dismiss the complaint in its entirety[12] and deny defendants' motion for Rule 11 sanctions. It is so ordered.

---

**9.** *See In re Apple Computer Securities Litigation,* 886 F.2d 1109, 1116 (9th Cir.1989).

**10.** For example, plaintiffs set forth the individual defendants' stock sales. These facts, moreover, were not themselves based on information and belief.

**11.** We are, however, troubled by plaintiffs' rushed investigation. "Rule 11 imposes an affirmative duty of reasonable investigation on an attorney signing any paper." *Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750, 751 (7th Cir.1988). What constitutes a reasonable investigation, in turn, depends on the circumstances of the given case. *Beverly Gravel, Inc. v. DiDomenico,* 908 F.2d 223, 225 (7th Cir.1990). Among other things, courts should consider how much time an attorney had to investigate and whether information was in the control of the defendant. *Id.* at 225. Here, plaintiffs were under no time constraints to file their complaint as quickly as they did. Furthermore, federal regulations made a substantial number of relevant documents available to the public once

Omniflox was approved. *See* 21 C.F.R. § 314.-430(e). The fact that plaintiffs attached several pertinent documents to their Surreply to Defendants' Motions to Dismiss and for Rule 11 Sanctions ("Surreply") attests to the accessibility of such evidence. Accordingly, plaintiffs have skated on the thin ice of this Court's tolerance for such haste and are advised that any further submissions to the Court in this matter should reflect patient and careful inquiry into the factual and legal grounds of their complaint.

**12.** We grant the plaintiffs leave to amend within 30 days, if they so choose, because they have come close to complying with Rule 9(b), and because it appears, based on the documents attached to their Surreply, that the plaintiffs may be able to state their case with enough particularity to survive a motion to dismiss. This remains to be seen. In any event, we cannot consider these documents in ruling on the current motion to dismiss, because they do not fall within the four corners of the complaint, nor were they attached to the pleadings.