William B. GILBERT, Joan Behl, Lewis Bair and Seith Blate, Plaintiffs,

v.

FIRST ALERT, INC., Malcolm Candlish, Gary L. Lederer, David V. Harkins, Scott A. Schoen, Anthony J. Dinovi, Thomas H. Lee and Thomas H. Lee Company, Defendants.

No. 94 C 6760.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 21, 1995.

Michael David Craig, Schiffrin & Craig, Ltd., Buffalo Grove, IL, Mark C. Gardy, Abbey & Ellis, New York City, Marc I. Gross, New York City, for plaintiff.

Jeffrey R. Tone, Scott Charles Solberg, Sidley & Austin, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiffs William Gilbert, Joan Behl, Lewis Bair and Seth Blate bring this putative class action complaint against defendants First Alert, Inc., Malcolm Candlish, Gary Lederer, David Harkins, Scott Schoen, Anthony Dinovi, Thomas H. Lee and the Thomas H. Lee Company ("THL Co."). They allege that First Alert committed a fraud on the market when it disseminated false information concerning its products in late 1994 in an effort to boost product sales and allow certain individual defendants to sell their stock at a profit. Presently before us is plaintiffs' motion for class certification and defendants' motion to dismiss the complaint. For the reasons set forth below, we certify the proposed class and deny defendants' motion to dismiss.

### I. Background

Defendant First Alert manufactures safety devices such as smoke alarms and carbon monoxide detectors. After the tragic death of tennis star Vitas Gerulaitis in September 1994 from carbon monoxide poisoning, the company began an aggressive marketing campaign for its carbon monoxide detectors. Obviously the campaign and accompanying press coverage was successful, because within two weeks after Gerulaitis' death First Alert stock had risen from $13.125 per share to $20 per share.

Due to this prosperity, First Alert arranged with THL Co. and Thomas Lee to issue a second public offering of First Alert stock. Along with defendants Candlish and Lederer, the defendants sought to sell approximately 6.5 million shares of stock dur-

ing the second offering. Plaintiffs contend, however, that in order to ensure a high price during the offering, defendants caused First Alert to make several false and misleading statements. First, the prospectus accompanying the offering ("Prospectus") stated that several local governments were considering legislation requiring the use of carbon monoxide detectors in houses and apartments. Specifically, the Prospectus listed Pittsburgh as one of the municipalities examining the issue. Plaintiffs maintain that defendants knew, or were reckless in not knowing, that Pittsburgh was in fact not considering such legislation.

Second, plaintiffs assert that the discussion of "Risk Factors" in the Prospectus was too vague and overgeneralized, given that defendants knew of specific problems that hampered their product's effectiveness and undermined the company's ability to compete in the carbon monoxide detector market. These defects included the inability to quickly and easily reset the detector, the absence of a digital read-out, and over-sensitivity to carbon monoxide. In addition, plaintiffs contend that defendants downplayed an ongoing investigation by the Consumer Products Safety Commission ("CPSC") into its detectors, a fact which they claim raised serious doubts about the quality of defendants' product.

On November 10, 1994, only two days after the effective date of the Prospectus, the defendants announced that they were withdrawing the offering due to "misinformation relating to the effectiveness and market potential of its carbon monoxide detectors." Amended Complaint ¶ 68. The next month, First Alert offered all purchasers of its carbon monoxide detectors a full refund because of high sensitivity levels. In response to these events plaintiffs filed this class action lawsuit, alleging violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t, and S.E.C.

Rule 10b–5 promulgated thereunder, 17 C.F.R. ¶ 240.10b–5.

## II. Class Certification

Plaintiffs have moved for certification of a class of all persons who purchased First Alert common stock from October 12, 1994 through November 10, 1994, inclusive, and suffered damages because of their purchase. Rule 23 of the Federal Rules of Civil Procedure establish a two-step analysis to determine if a class action is proper. The court first determines whether the proposed class meets the four preliminary requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). If these preliminary requirements are satisfied, the court must then decide if the putative class qualifies under one of the three subsections of Rule 23(b). In the instant case, plaintiffs argue that certification is proper under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and [ ] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." [1]

In evaluating a motion for class certification, the allegations made in support of certification are taken as true, and we do not examine the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *In re Bally Mfg. Sec. Corp. Litig.,* 141 F.R.D. 262, 267 (N.D.Ill.1992), *aff'd, Arazie v. Mullane,* 2 F.3d 1456 (7th Cir.1993). The burden of showing that the class certification requirements have been met rests

---

1. The Rule goes on to define the pertinent factors to consider in making this finding:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

with the party seeking certification, in this case the plaintiffs. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). In general, "securities fraud cases are uniquely suited to class action treatment since the claims of individual investors are often too small to merit separate law suits. The class action is thus a useful device in which to litigate similar claims as well as an efficient deterrent against corporate wrongdoing." *Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas), Ltd.,* 94 F.R.D. 147, 150 (N.D.Ill.1982).

■ Defendants do not contest the numerosity of the proposed class. Excluding shares owned by the defendants, First Alert had more than four million shares of common stock outstanding at the time of the alleged misstatements, which were publicly listed and traded on the NASDAQ system. Although it is not known exactly how many persons would fall into the class, we are driven by common sense to conclude that the class "is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); *Bally,* 141 F.R.D. at 267.

■ Nor do we have any difficulty finding that plaintiffs have satisfied 23(a)(2)'s requirement of commonality. Plaintiffs have alleged that defendants disseminated false information concerning the efficacy and potential success of First Alert carbon monoxide detectors. Whether these statements were made, whether they were false or misleading, whether they were material, whether defendants circulated them with the requisite scienter, and whether they affected the price of First Alert stock are all questions of fact or law common to the class. *See Basic, Inc. v. Levinson,* 485 U.S. 224, 242, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988); *Harman v. LyphoMed, Inc.,* 122 F.R.D. 522, 525 (N.D.Ill. 1988).

Defendants do challenge plaintiffs' ability to satisfy the remaining prerequisites of 23(a)—typicality and adequacy of representation. Defendants argue that because plaintiffs Blate, Bair and Gilbert are sophisticated speculators who did not rely on the integrity of the market in making their investments, they are subject to defenses which are atypical to the class—i.e., lack of reliance. Further, defendants contend that because Bair has been a plaintiff in five other securities class actions filed by counsel in this case, his reliance on market integrity is especially questionable. Finally, defendants maintain that Blate, Bair and Gilbert have given deposition testimony which undermines their credibility. Defendants assert that these differences destroy the plaintiffs' typicality with the remaining class members and undermine their ability to adequately represent the class.

■ In evaluating plaintiffs' typicality, we are "to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n,* 7 F.3d at 597 (quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). Even if there are factual differences between the claims of the class representatives and the remainder of the class members, typicality will exist so long as the "essential characteristics" of the claims are identical. *Id.; see also* Herbert Newberg & Alba Conte, 4 *Newberg on Class Actions* § 22.17, at 22–58 (3d ed. 1988) (defining typicality as where representative's claims "arise from the same event or practice or course of conduct that gives rise to the claims of the other class members, and his or her claims [are] based on the same legal theory.") (footnotes omitted). In order to satisfy the adequacy of representation prong of 23(a)(4), "the interests of the class representative must coincide with those of the rest of the class and the class representative and his attorney must be prepared to prosecute the action vigorously, tenaciously and with adequate financial commitment." *Ridings,* 94 F.R.D. at 154.

■ In this case, the claims of the named plaintiffs arise out the same alleged misconduct by defendants—ie., dissemination of false or misleading statements of material fact. All of these claims rely on the same legal theory: that defendants committed a fraud on the market. Under this theory, a plaintiff need not allege that he actually re-

lied on the misstatement since "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action." *Basic*, 485 U.S. at 247, 108 S.Ct. at 992.

■ Defendants correctly point out that this presumption of reliance is not absolute, and argue that the named plaintiffs are particularly susceptible to defenses attacking this presumption and therefore are not appropriate class representatives. *See Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir.1974). We disagree. The presumption of reliance may only be rebutted by a showing that the alleged misrepresentation either (1) did not distort the price of the security or (2) that the plaintiff would have traded in the security despite his knowledge of the misrepresentation. *Id.* 485 U.S. at 248, 108 S.Ct. at 992. Defendants have not sought to prove either of these two conditions directly; rather, they simply claim that because plaintiffs are "sophisticated speculators," they could not have relied on the integrity of the market when buying and selling First Alert common stock. This argument is particularly unpersuasive given that all of the individual defendants testified that they relied on information about First Alert from various market sources, indicating that they relied (at least in part) on the integrity of the market. *See Katz v. Comdisco, Inc.*, 117 F.R.D. 403, 409 (N.D.Ill.1987). Simply because the individual plaintiffs may be stock speculators does not place them in a different position from other members of the class with respect to the allegation that defendants disseminated false or misleading information. *See Ridings*, 94 F.R.D. at 152; *see also Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D.Pa.1989) ("There is a fundamental difference between an investor's presumption that the market price will move and the fact that the price was tainted by fraud."). Moreover, investigation into the motivations behind the individual plaintiffs' decisions to buy or sell stock would be improper at this time, given that we are prohibited from inquiring into the merits of the case. *Moskowitz*, 128 F.R.D. at 631 (citing *Eisen*, 417 U.S. at 177–78, 94 S.Ct. at 2152–53). In sum, we refuse to find the named plaintiffs' claims atypical solely by virtue of their alleged status as "sophisticated speculators." [2]

■ Defendants also maintain that plaintiff Bair is an inappropriate class representative because he has been a plaintiff in five other class action securities cases in the past fifteen years. While denial of class certification may be appropriate where the putative class representative appears to have purchased the stock for the sole purpose of bringing a subsequent lawsuit, *see Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992), we are not faced with such a case. Rather, Bair purchased approximately $7,000 worth of First Alert stock during the relevant time period, and there is no evidence indicating that these purchases were made simply to allow him to act as a named plaintiff in a future action. Moreover, the initiation of five lawsuits in fifteen years does not strike us as the sort of frequency which would necessarily rebut the presumption that Bair relied on the integrity of the market price. *See Steiner v. Ideal Basic Indus.*, 127 F.R.D. 192, 194 (D.Colo.1987) (class representative certified notwithstanding at least 15 prior lawsuits).

■ Finally, defendants contend that in the named plaintiffs' deposition testimony they claim to have seen articles about Pittsburgh's consideration of carbon monoxide laws, although defendants' own research indicates that no such articles ever existed. These inconsistencies, defendants contend, undermined the named plaintiffs' credibility and threaten their ability to adequately represent the class. Plaintiffs respond to this

2. We note that defendants' citation to *J.H. Cohn & Co. v. American Appraisal Assocs., Inc.*, 628 F.2d 994, 998–99 (7th Cir.1980), is unavailing. In that case, the Seventh Circuit refused to grant the extraordinary remedy of mandamus to a plaintiff who sought review of a district judge's denial of a motion for class certification. In addition, the named plaintiff was a diversified mutual fund, rather than an individual investor. The case therefore provides little guidance in resolving the instant motion.

argument by presenting evidence indicating that articles about the Pittsburgh issue did exist in the market press during the relevant time period, and that at worst, the named representatives' statements are due to faulty recollection rather than an intent to deceive. As plaintiffs have demonstrated that news stories existed which would comport with their deposition testimony, and therefore no clear problem of credibility exists, we decline to find them inadequate. *Cf. Kline v. Wolf*, 88 F.R.D. 696, 699–700 (S.D.N.Y.1981) (denying certification of class representatives because their testimony directly contradicted allegations in complaint), *aff'd*, 702 F.2d 400 (2d Cir.1983).

Accordingly, we grant plaintiffs' motion and certify the following class:

> All persons who purchased First Alert common stock during the period from October 12, 1994 to November 10, 1994, inclusive, and who suffered damages thereby. Excluded from the class are defendants, members of the individual defendants' families, any entity in which any defendant has a controlling interest or is a parent or subsidiary of or is controlled by First Alert, and the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns of any of the defendants.

### III. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Chaney v. Suburban Bus Div. of the Regional Transp. Auth.*, 52 F.3d 623, 627 (7th Cir. 1995). At this stage in the litigation we take as true all factual allegations made in the complaint, and construe all reasonable inferences therefrom in plaintiff's favor. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.1995).

Defendants raise three principal arguments in support of their motion. First, they contend that the alleged misstatement in the Prospectus concerning Pittsburgh's consideration of carbon monoxide legislation is not, as a matter of law, material. Second, they argue that plaintiffs have failed to allege any material misrepresentation or omissions concerning alleged defects in its carbon monoxide detectors. Third, defendants attack plaintiffs' contention that the existence of reported false alarms in First Alert's detectors was not disclosed in the Prospectus.

### A. Statement About Pittsburgh Legislation

Plaintiffs assert in their complaint that defendants knew, or were reckless in not knowing, that the statement in the Prospectus about carbon monoxide legislation being considered in Pittsburgh was false. Defendants argue that even if this statement was untrue, it was not "material" and therefore cannot be actionable under federal securities laws. A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important" in making an investment decision. *Basic*, 485 U.S. at 231–32, 108 S.Ct. at 983–84 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). In general, such a determination falls within the province of the trier of fact, and will only be decided as a matter of law if the disclosure is "so obviously [un]important to an investor, that reasonable minds cannot differ on the question of materiality." *See TSC*, 426 U.S. at 450, 96 S.Ct. at 2133; *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1332–33 (7th Cir.1995). We cannot conclude as a matter of law that defendants' reference to possible legislation in Pittsburgh would not have played any role in an investor's decision. Clearly, a carbon monoxide requirement in such a major city would have led to increased sales for First Alert, and may well have influenced other municipalities in making similar decisions. Such information, while probably not the only factor influencing an investor's decision, is not irrelevant. Indeed, as evidence of its materiality plaintiffs allege that after a *Wall Street Journal* article disclosed that the reference to Pittsburgh in the Prospectus was erroneous, First Alert's stock declined in val-

ue.[3] In short, we decline to find as a matter of law that a misstatement about the possible passage of legislation mandating the purchase of carbon monoxide detectors in Pittsburgh is too insignificant for purposes of Rule 10b–5.

Defendants also contend that plaintiffs' allegation in paragraph 59 of the complaint that defendants "knew or recklessly disregarded that Pittsburgh was not considering adopting such legislation" is inadequate under Federal Rule of Civil Procedure 9(b).[4] See DiLeo v. Ernst & Young, 901 F.2d 624, 626 (7th Cir.) (holding that plaintiff alleging fraud must plead the circumstances constituting fraud in detail), cert. denied, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); In re Abbott Labs. Sec. Litig., 813 F.Supp. 1315, 1318–19 (N.D.Ill.1992 (dismissing complaint for failing to allege facts which would permit an inference that defendants knew of the falsity of their statements). Rule 9(b) has been interpreted as requiring plaintiffs to "provide enough detail about the underlying facts which illustrate that a firm's public statements were fraudulent to allow a court to evaluate the claim in a meaningful way." Arazie, 2 F.3d at 1465.

 In this case plaintiffs have satisfied this test. First, they claim that defendants had a strong financial motive for making the misstatement, since they were planning a large offering of First Alert common stock that they owned. See Reshal Assocs., Inc. v. Long Grove Trading Co., 754 F.Supp. 1226, 1235–36 (N.D.Ill.1990). Second, plaintiffs allege that defendant Candlish, First Alert's Chairman and CEO, subsequently admitted that he knew the statement concerning Pittsburgh was false at the time of the offering. Third, First Alert claimed to be actively involved in monitoring legislation before various municipalities, and marketed itself as being able to capitalize quickly on regulatory changes. Thus, plaintiffs argue, it is unlikely that the company was unaware of the true status of legislative efforts in Pittsburgh. In short, we find the factual basis outlined in the complaint sufficient to infer that defendants made the misstatement about Pittsburgh with the requisite fraudulent intent. Accordingly, this portion of defendants' motion is denied.

### B. Product Defects

 Defendants next challenge the allegation that they did not fully disclose the existence of problems with the First Alert detector. Defendants argue that their statement in the Prospectus concerning risk factors was adequate to warn potential investors, and assert that plaintiffs have not identified how this statement was false. Plaintiffs respond that defendants were aware of specific, important problems with their detectors, and yet they only published a vague boilerplate statement in the Prospectus concerning future risks. Although defendants are correct that they cannot be held liable for failing to predict the future accurately, they cannot avoid liability for material omissions by simply uttering general lessons on business risks. See Eckstein v. Balcor Film Investors, 8 F.3d 1121, 1127 (7th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994). In other words, cautionary disclosures concerning the future performance of a product does not satisfy the obligation to disclose historical and current material facts. See In re Regeneron Pharmaceuticals Sec. Litig., No. 94 Civ 1785(CLB), 1995 WL 228336, at *5, 1995 U.S.Dist. LEXIS 4023, at *14–15 (S.D.N.Y. March 10, 1995). In this case plaintiffs allege that defendants knew that their carbon monoxide detectors were oversensitive, could not be quickly or easily reset, and were ineffective for several hours after sounding a false alarm. These alleged defects were not disclosed in the

---

3. Defendants argue that the decline in stock value was not severe, and that it could have been caused by other factors. However, defendants have not shown conclusively that the decline was caused by other factors. Thus, reading these facts in a light most favorable the plaintiffs militates against dismissing this claim.

4. Rule 9, which deals with pleading special matters, provides:

(b) **Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

Prospectus, in which defendants were required to make all material disclosures. Because we cannot conclude as a matter of law that the general discussion of risk factors in the prospectus was sufficient under Rule 10b–5, we deny defendants' motion to dismiss this claim.

### C. Reports of False Alarms

 Finally, defendants argue that they sufficiently disclosed in the Prospectus the existence of reports of false alarms in First Alert detectors. In discussing the problem of false alarms, the Prospectus stated:

> Since the introduction of the Company's carbon monoxide detector in 1993, there have been certain reports of incidents of alleged false alarms regarding carbon monoxide detectors, including those manufactured by the Company. Since March of 1994, the Company has received two requests for information from the CPSC with respect to these alleged false or nuisance alarms by the Company's carbon monoxide detectors. Based on the nature of the alleged problem and the number of carbon monoxide detectors sold by the Company to date, the Company does not believe that the CPSC investigation will have a material adverse effect on the Company's financial condition or results of operations.

Complaint ¶ 64. Plaintiffs argue that this disclosure was insufficient because it gives the impression that false alarms, to the extent they occurred at all, were not serious enough to affect the success of First Alert detectors. In actual fact, however, plaintiffs' contend that defendants knew of the existence of significant false alarms and the seriousness of the CPSC investigation. In support of their allegations, plaintiffs point out that defendants offered a refund to all First Alert customers who experienced false alarms. Although defendants' statement in the prospectus was true, if in context it gave investors a different impression of the false alarm problem, it may constitute a material misrepresentation. *See McMahan & Co. v. Wherehouse Entertainment, Inc.*, 900 F.2d 576, 579 (2d Cir.1990), *cert. denied*, 501 U.S. 1249, 111 S.Ct. 2887, 115 L.Ed.2d 1052

(1991). Although plaintiffs may eventually be unable to demonstrate that First Alert's disclosure was insufficient, we cannot conclude at this stage that a reasonable investor would consider the omitted information irrelevant. Accordingly, we must deny defendants' motion to dismiss this claim.

### IV. Conclusion

For the reasons set forth above, plaintiffs' motion for class certification is granted and defendants' motion to dismiss the class action complaint is denied. It is so ordered.