**David DANIS, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**USN COMMUNICATIONS, INC., J. Thomas Elliott, Gerald J. Sweas, Merrill Lynch & Co., Cowen & Company and Donaldson, Lufkin & Jenrette Securities Corporation, Defendants.**

No. 98 C 7482.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 29, 1999.

392

Marvin Alan Miller, Kenneth A. Wexler, Miller, Faucher, Cafferty and Wexler, L.L.P., Chicago, IL, Steven J. Toll, Cohen, Milstein, Hausfeld & Toll PLLC, Seattle, WA, for plaintiffs.

Christina M. Tchen, Tiffanie Noelle Cason, Paula Marie Stannard, Janet E. Byrne Thabit, Frances P. Kao, Skadden, Arps, Slate, Meagher & Flom, Lee Ann Russo, David L. Carden, Jones, Day, Reavis & Pogue, William F. Lloyd, David M. Schiffman, Lisa Maria Cipriano, Sidley & Austin, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Lead plaintiffs Thomas Karr ("Karr") and Jack Priesmeyer ("Priesmeyer") sue various defendants for violation of the securities laws in connection with the sale of stock in USN Communications, · Inc. ("USN") in 1998. Karr and Priesmeyer move to certify a plaintiff class and an underwriter defendant class pursuant to Fed.R.Civ.P. 23.

### BACKGROUND

■ In ruling on a motion for class certification, the allegations of the complaint are taken as true. *Hickey v. Great Western Mortgage Corp.*, 158 F.R.D. 603, 606 (N.D.Ill. 1994). Plaintiffs are purchasers of stock in USN, a telecommunications services reseller. Defendants consist of (1) certain officers and directors of USN ("the individual defendants"), (2) three firms that managed the underwriting of USN's initial public offering: Merrill Lynch ("Merrill"), Cowen & Company ("Cowen"), and Donaldson, Lufkin & Jenrette ("DLJ") (collectively "the underwriter defendants"), and (3) Deloitte & Touche ("Deloitte"), USN's auditor and technical consultant.

According to plaintiffs, defendants never intended to develop USN as a viable company or to design, develop, and implement the technical infrastructure and controls necessary to provide telecommunications services. Instead, defendants sought to "flip" USN—to take USN public, utilize the proceeds from the initial public offering to hire a sales force in order to quickly build the largest "book of business" of any reseller in the country, and to then sell USN and its account base to a larger, established telecommunications company that already had the infrastructure and control systems in place. In order to accomplish this "flip" scheme, defendants issued numerous false statements both prior to and after USN's initial public offering that conditioned the financial markets to believe USN was experiencing impressive sales and revenue growth. These statements were allegedly false and misleading because they (1) misrepresented USN's provisioning capabilities, billing capabilities, and technological infrastructure, (2) overstated USN's revenues, accounts receivable, assets, and number of access lines purportedly sold and provisioned, and (3) understated USN's allowance for doubtful accounts, expenses, and net loss. Plaintiffs claim these misrepresentations violated §§ 11 and 12 of the Securities Act of 1933, ("Securities Act"), and § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act").

Lead plaintiffs Karr and Priesmeyer[1] seek to certify and · represent a plaintiff class defined as:

all persons, other than defendants, their heirs, successors and assigns and the members of the Individual Defendants' immediate families, who: (i) purchased USN common stock in the open market pursu-

---

**1.** Karr, Priesmeyer, and three other individuals (James Jung, Timothy Wesson, and Thomas VonDerLinn) were originally designated to act as lead plaintiffs. Plaintiffs have since withdrawn their request to certify Jung, Wesson, and Von- DerLinn as class representatives. Accordingly, the court examines only the propriety of permitting Karr and Priesmeyer to act as class representatives.

ant to the Registration Statement/Prospectus; or (ii) purchased USN common stock in the open market during the period February 4, 1998 through November 20, 1998, and who were damaged by the defendants' violations of the federal ·securities laws. Plaintiffs also seek to certify an underwriter defendant class consisting of all underwriters who participated in USN's initial public offering pursuant to an underwriting agreement.

## DISCUSSION

In order to maintain a class action, plaintiffs must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993). Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). If these prerequisites are satisfied, the court must determine whether one of the standards of Rule 23(b) is met. *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D.Ill.1988). Here, plaintiffs argue Rule 23(b)(3) is satisfied because questions of law or fact common to the class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Fed.R.Civ.P. 23(b)(3). Failure to meet any one of the requirements of Rule 23(a) or (b) precludes certification of the class. *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir.1980).

## I. CERTIFICATION OF PLAINTIFF CLASS

Defendants primarily oppose certification of the plaintiff class on the grounds that Karr and ·Priesmeyer do not meet Rule 23's typicality and adequacy requirements.[2] They argue Karr and Priesmeyer are subject to unique defenses rendering their claims

atypical ·from those of the class and compromising their ability to adequately represent the class. Under Rule 23(a)(3)'s typicality requirement, the representative's claims must have the "same essential characteristics as the claims of the· class at large." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). A claim is typical if it arises from the same event or course of conduct that gives rise to claims of other class members and all claims are based on the same legal theory. *De La Fuente*, 713 F.2d at 232 (citing H. Newberg, Class Actions § 1115(b) at 185 (1977)). The similarity of legal theory may control even where factual distinctions exist between the claims of the named representative and the other class members. *De La Fuente*, 713 F.2d at 232.

Defenses specific to the named representative may defeat the requirements of typicality or adequacy of the representative. *J.H. Cohn & Co. v. American Appraisal Assocs.*, 628 F.2d 994, 999 (7th Cir.1980). The fear is that the class representative will become distracted by the existence of a defense unique to him and therefore compromise the interests of the class. *See Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164–65 (7th Cir.1974). In order to defeat typicality or adequacy, the specific defense must be "unique, arguable and likely to usurp a significant portion of the litigant's time and energy." *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334 (N.D.Ill.1982). Nevertheless, although the existence of an arguable defense will be taken into account, the court is not required to deny certification for speculative reasons; the certification decision always remains within the sound discretion of the court. *Hickey v. Great Western Mortgage Corp.*, 158 F.R.D. 603, 609 (N.D.Ill. 1994); *Ross v. Bank South, N.A.*, 837 F.2d 980, 991 (11th Cir.1988), *modified on other grounds*, 885 F.2d 723 (11th Cir.1989).

### A. Plaintiff Karr

Defendants contend Karr cannot properly advance the plaintiff class' § 10(b) claims because Karr is uniquely subject to the defense of lack of reliance. To state a

---

2. Defendants do not argue that plaintiffs fail to meet the other requirements of Rule 23, and this

court's own review finds that plaintiffs satisfy those requirements.

claim under § 10(b), a plaintiff must ordinarily show he or she relied on a material misstatement or omission in purchasing a security. *See In re HealthCare Compare Corp. Sec. Lit.*, 75 F.3d 276, 280 (7th Cir.1996). However, the "fraud on the market" theory of reliance permits a plaintiff to pursue a § 10(b) claim without showing direct reliance on the misstatement or omission; indirect reliance may be presumed. *Basic, Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The theory holds that efficient trading markets automatically establish a causal link between material misstatements or omissions and a stock purchaser's injury, and manifest that link in the stock's price. *See Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1129 (7th Cir.1993). In *Basic*, the Supreme Court explained the nature of the fraud on the market theory:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements....

*Basic*, 485 at 241–242, 108 S.Ct. 978 (citation omitted).

■ Defendants argue Karr's unique securities trading practices preclude him from invoking the fraud on the market presumption of reliance and render him atypical from those plaintiffs who will resort to the presumption. *See McNichols v. Loeb Rhoades & Co., Inc.*, 97 F.R.D. 331, (N.D.Ill.1982) ("A number of courts have recognized that the defense of nonreliance on the integrity of the market when raised against the named plaintiff in a fraud on the market case may destroy the typicality of his or her claims"). Defendants note Karr engaged in the short selling of USN stock just after the initial public offering. Defendants contend that because short sellers believe a stock's price is inflated due to the market's failure to accurately price the stock, short sellers inherently distrust the market. This being the case, short sellers cannot invoke the fraud on the market presumption, which is premised on trust of an efficient market's ability to price a stock.

The motivations behind short selling may indeed be inconsistent with the assumptions underlying the fraud on the market theory. *See e.g., Zlotnick v. TIE Communications*, 836 F.2d 818, 822–23 (3rd Cir.1988). However, Karr's short sales are not the only transactions of USN stock in which he engaged. After his initial short sales, Karr also made ordinary purchases of USN stock during the class period, stock which he held and on which he sustained a loss. These later purchases are of the kind typically at issue in fraud on the market cases, and Karr may use these purchases to invoke the fraud on the market presumption of reliance. As many potential class members are also likely to invoke the presumption, Karr is typical.

But defendants respond that Karr cannot invoke the presumption with respect to these later purchases because he was speculating on "bad news"—he made these purchases while the stock's price declined in the face of negative reports concerning USN's operations and profitability in the hopes that the stock would later rise. Defendants argue that this unique buying strategy will subject Karr to further unique defenses concerning reliance, although they fail to articulate exactly how. Presumably, one who purchases on bad news and during a decline in stock price could be said to be on notice that problems exist at the company, thereby precluding reliance on "rosy" statements from the company's management. However, the fact that Karr may have purchased on bad news does not preclude him from invoking the fraud on the market presumption or representing the plaintiff class. As put succinctly by another district court, "[t]here is a fundamental difference between an investor's presumption that the market price will move and the fact that the price was tainted by fraud." *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D.Pa.1989). Simply because Karr bought low in speculation that USN's stock price would later rise has no bearing on whether the prices at which he bought were influenced by defendants' fraud.

■ It must be remembered that a plaintiff's claim is typical under Rule 23(a)(3) "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992); *De La Fuente,* 713 F.2d at 232 (7th Cir.1983). Karr's § 10(b) claims are typical of those of the class because he alleges defendants fraudulently disseminated material misrepresentations concerning USN's operations. The fact that Karr may have used somewhat distinctive buying strategies does not render him atypical with respect to this claim of overarching fraud. *See Gilbert v. First Alert, Inc.,* 904 F.Supp. 714, 720 (N.D.Ill.1995) ("Simply because the individual plaintiffs may be stock speculators does not place them in a different position from other members of the class with respect to the allegation that defendants disseminated false or misleading information."); *Ridings v. Canadian Imperial Bank of Commerce Trust Co., Ltd.,* 94 F.R.D. 147, 152 (N.D.Ill.1982). In fact, in a case of this type, it is likely that numerous purchasers of USN stock had distinctive motivations behind their decisions to buy:

> It can be stated without fear of gainsay that the roster of shareholders of every large, publicly traded corporation includes institutional investors, short-sellers, arbitragers, etc. The fact that these traders have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price played no part whatsoever in their decision making.

*In re Bally Mfg. Sec. Lit.,* 141 F.R.D. 262 (N.D.Ill.1992) (quoting *Moskowitz,* 128 F.R.D. at 631). Defendants have offered no proof price played no role in plaintiffs' decisions. Therefore, taking the allegations as true, the court finds Karr's § 10(b) claims typical of those of the plaintiff class. Karr

may adequately advance those claims on behalf of the class.[3]

**B. Plaintiff Priesmeyer**

■ Defendants contend Priesmeyer cannot advance the class' § 10(b) claims because he cannot show reliance. Defendants argue that, as a purchaser in the initial public offering, Priesmeyer must show reliance upon USN's prospectus. But, according to defendants, he cannot invoke the fraud on the market presumption of reliance to do this. The hallmark of the theory is its presumption of an efficient market; the theory does not apply to initial public offerings because no market exists at the time of initial public offerings. *See Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1130 (7th Cir. 1993); *Freeman v. Laventhol & Horwath,* 915 F.2d 193, 198 (6th Cir.1990) (fraud on the market theory does not apply to new stock issue because, among other things, "[t]he price of newly issued securities is set primarily by the underwriter and the offeror, not by the market").

Therefore, defendants contend, because Priesmeyer may not use the fraud on the market theory's presumption of reliance, he must show direct reliance on the prospectus. But defendants argue Priesmeyer is also unable to show direct reliance because he testified that he did not rely on the prospectus when purchasing USN stock in the initial offering. In fact, he testified that he did not receive the prospectus until days after he purchased the stock. Instead, Priesmeyer testified that he relied only on the advice of his broker at Merrill, who regarded the stock favorably. Defendants assert Priesmeyer is an atypical and inadequate representative of those plaintiffs who will attempt to establish reliance on the prospectus.

Defendants are incorrect. "Relying on the advice of investment advisors will not defeat typicality so long as those investment advisors also relied on the prospectuses in giving

**3.** Defendants also question Karr's credibility. They contend he failed to truthfully disclose his sales of USN stock in a certification to this court. Defendants argue Karr is an inadequate class representative because the jury's attention will be diverted from the substance of plaintiffs' claims to Karr's credibility, thereby damaging the interests of remaining class members. The court notes that Karr disclosed his USN stock sales during his deposition and claimed the certification's failure to mention these sales was due to oversight. The court finds that Karr's representations do not raise serious credibility issues that would consume the trial.

their advice." *Frietsch v. Refco, Inc.*, 1994 WL 10014 at *4 (N.D.Ill. Jan. 12, 1994); *Majeski v. Balcor Entertainment Co., Ltd.*, 134 F.R.D. 240, 246 (E.D.Wis.1991) (plaintiff can pursue § 10(b) claim if plaintiff "actually relied on the public offering materials, or a broker who relied on these materials"). Therefore, the fact that Priesmeyer may have to show his broker relied on the prospectus does not render him an atypical § 10(b) plaintiff. Indeed, in this case, plaintiffs allege the initial public offering was conducted pursuant to a firm commitment underwriting. Thus, "[r]eliance on third parties such as investment counselors ... is likely to be typical, rather than atypical, of the circumstances under which a substantial number of class members purchased their stock." *Kronfeld v. Trans World Airlines, Inc.*, 104 F.R.D. 50, 53 (S.D.N.Y.1984).

Defendants further contest Priesmeyer's typicality on the ground that he relied on "insider" information through his Merrill broker. Because Priesmeyer's broker was employed by the same firm alleged to have non-public information regarding the true state of affairs at USN, defendants argue Priesmeyer's broker relied on this "insider" information and, therefore, so did Priesmeyer. Defendants conclude Priesmeyer may not represent a class of investors claiming reliance only upon false and misleading public information. However, defendants point to nothing in the record indicating Priesmeyer's broker had access to and acted upon "insider" information. Pure speculation will not defeat a finding of typicality.

## C.  Karr and Priesmeyer's Standing

■ Finally, defendants argue Karr and Priesmeyer cannot represent the plaintiff class because each of them lack standing to assert all of the claims alleged in the complaint. In advancing this argument, defendants distinguish between two periods in which USN stock was purchased: (1) the initial public offering and (2) the aftermarket period following the initial public offering. Priesmeyer bought only in the initial public offering, and Karr bought only in the aftermarket. Defendants argue that because Priesmeyer did not purchase in the aftermarket, he lacks standing to raise claims based on misrepresentations occurring in the aftermarket. Similarly, because Karr did not purchase in the initial public offering, he lacks standing to assert claims based on misrepresentations in the initial offering. According to defendants, Karr and Priesmeyer may not represent a class pursuing those claims because they lack standing as to certain claims.

Defendants' argument is specious. Taken together, Karr and Priesmeyer have standing as to all claims asserted: Karr over claims arising from aftermarket purchases, and Priesmeyer over claims arising from initial public offering purchases. Numerous courts have certified classes containing both public offering and aftermarket buyers. *See, e.g., Weinberger v. Thornton*, 114 F.R.D. 599, 604 (S.D.Cal.1986) (certification of class containing both public offering and aftermarket purchasers is appropriate "where a set of plaintiffs alleges an ongoing scheme of misrepresentation"); *Weinberger v. Jackson*, 102 F.R.D. 839, 844 (N.D.Cal.1984); *In re Activision Securities Litigation*, 621 F.Supp. 415, 433 (N.D.Cal.1985) ("[I]t is no barrier that [a] plaintiff may have purchased ... stock pursuant to the initial offering yet he seeks to represent purchasers in the aftermarket."); *In re Badger Mountain Irr. Dist. Sec. Lit.*, 143 F.R.D. 693, 699 (W.D.Wash. 1992) (finding "that the injuries allegedly caused by defendants are typical of both plaintiffs who purchased on the initial offering and plaintiffs who purchased on the secondary market").

Defendants' primary ground for attacking the standing of Karr and Priesmeyer to represent plaintiffs who purchased at different times is that Karr and Priesmeyer's decisions to buy, and the prices at which they bought, were influenced by a particular mix of public information existing at the times they bought. *See Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir.1992) ("post-purchase statements cannot form the basis of [§ 10(b) ] liability, because the statements could not have affected the price at which plaintiff[s] actually purchased" the stock). Defendants argue Karr and Priesmeyer's claims are not typical of those plain-

tiffs who bought USN stock beyond the period of their own purchases because the mix of information available to and relied upon by later plaintiffs varied. This argument has been repeatedly rejected in fraud-on-the-market cases. *See, e.g., Scholes v. Stone, McGuire and Benjamin,* 143 F.R.D. 181, 185 (N.D.Ill.1992); *In re Scott Paper Co. Sec. Litig.,* 142 F.R.D. 611, 615 (E.D.Pa.1992); *Alfus v. Pyramid Technology Corp.,* 764 F.Supp. 598, 606 (N.D.Cal.1991); *see also Walsh v. Chittenden Corp.,* 798 F.Supp. 1043, 1055 (D.Vt.1992). "[W]ere the rule otherwise, there could never be a class action in securities fraud cases because a representative plaintiff would potentially be needed for each day of the class period, since on each day the mix of information available to the public would vary." *Feldman v. Motorola, Inc.,* 1993 WL 497228, Fed. Sec. L. Rep. (CCH), ¶ 97,806 (N.D.Ill. Oct. 14, 1993).

■■■ Karr and Priesmeyer's claims are typical of those of the class regardless of when they purchased. "Typical" does not mean "identical," *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 185 (N.D.Ill. 1992), but requires only a similarity between the essential characteristics of the claims advanced by the lead plaintiffs and those on behalf of the class. *De La Fuente,* 713 F.2d at 232. Plaintiffs allege a fraud by defendants that is essentially of the same character throughout the class period: that defendants materially misrepresented USN's operations, sales, performance, and revenues. Karr and Priesmeyer share the same interest with all potential class members in demonstrating the underlying fraudulent scheme, and they allegedly suffered the same type of harm as all potential class members: buying an inflated stock based on material misrepresentations. Whether these misrepresentations occurred in connection with the initial public offering, or at some later point during the class period, they are "typical" of the overarching fraud alleged.[4]

## II. Underwriter Defendant Class

■■■ Plaintiffs seek certification of an underwriter defendant class consisting of all underwriters who, pursuant to an underwriting agreement, participated in USN's initial public offering. The class would be represented by the underwriter defendants: Merrill, Cowen, and DLJ. For the following reasons, the court finds that this proposed class fails to satisfy the requirements of Rule 23.

### A. Numerosity

■■■■ The putative underwriter defendant class does not satisfy Rule 23(a)'s numerosity requirement. Rule 23(a)(1) permits certification only when "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Impracticable" does not mean "impossible," but rather, extremely difficult and inconvenient. *See, e.g., Skelton v. General Motors Corp.,* 1985–2 Trade Cas. (CCH) ¶ 66,683 (N.D.Ill. 1985). Although Rule 23 does not impose an absolute minimum on the permissible number of class members, a small number militates against certification. Certification of classes containing less than twenty-five members is generally not permitted absent special circumstances. *CL–Alexanders Laing & Cruickshank v. Goldfeld,* 127 F.R.D. 454, 455–57 (S.D.N.Y.1989); *State Security Ins. Co. v. Frank B. Hall & Co.,* 95 F.R.D. 496, 498 (N.D.Ill.1982).

The putative underwriter defendant class consists of fifteen underwriters. This number is not so numerous so as to render joinder "extremely difficult and inconvenient." *See, e.g., Lyne v. Arthur Andersen & Co.,* 1991 WL 247576, at *2 (N.D.Ill.1991) (refusing to certify class of eighteen members and noting "[a] prospective class of eighteen members is very small by Rule 23 norms"); *Goldfeld,* 127 F.R.D. at 455 (twenty-five prospective class members is an insufficiently low number to demonstrate numerosity); *State Security,* 95 F.R.D. at 498

---

4. Defendants also argue Karr and Priesmeyer are sophisticated investors, and sophisticated investors are subject to unique reliance defenses, presumably because they are less likely to be duped by materially misleading information regarding USN's operations. Even if Karr and Priesmeyer were sophisticated investors, this would not render their claims atypical. *See Gilbert v. First Alert, Inc.,* 904 F.Supp. 714, 720 (N.D.Ill.1995).

(prospective class size between 28 and 40 is "at best in the lower reaches of Rule 23 permissibility").

While plaintiffs need not show that joinder of all underwriter defendants is impossible, they must demonstrate why joinder is impracticable. Plaintiffs fail to do so. Nor do they demonstrate special circumstances warranting certification of a class of only fifteen members. Conclusory allegations do not overcome the numerosity requirement. *Marcial v. Coronet Insurance Co.*, 880 F.2d 954, 957 (7th Cir.1989); *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976). Plaintiffs know who these fifteen underwriter defendants are; they are major brokerage firms identified in USN's prospectus and their addresses are readily obtainable. *See Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y.1998) ("Knowledge of names and existence of members . . . renders joinder practicable."); *Moore v. Trippe*, 743 F.Supp. 201, 211 (S.D.N.Y.1990) ("[T]here appears to be little difficulty in joining all the members of the [class] in this one action . . . all the members . . . are clearly known . . ."). Therefore, joinder of the fifteen underwriters is not impracticable.

**B. Section 12(a)(2) Privity**

■ Failure to meet Rule 23(a)'s numerosity requirement is, by itself, sufficient reason to deny certification of the underwriter defendant class. In addition, denial is warranted due to Karr and Priesmeyer's lack of standing to assert § 12(a)(2) claims against each member of the underwriter defendant class.

Section 12(a)(2) requires privity between a plaintiff and the seller of the securities at issue—it permits suit against the seller of a security only by "the person purchasing such security from him." 15 U.S.C. § 77*l*(a)(2); *In re Itel Securities Litigation*, 89 F.R.D. 104, 116 (N.D.Cal.1981) ("§ 12 contemplates only an action by a buyer against his immediate seller") (citations omitted); *Akerman v.*

*Oryx Communications, Inc.*, 609 F.Supp. 363, 372 (S.D.N.Y.1984). Therefore, this privity requirement means that if a plaintiff wishes to sue a seller of stock under § 12(a)(2), he must have bought the stock from that seller; a plaintiff cannot sue a seller from whom he did not purchase. "[C]ourts consistently hold the absence of buyer-seller privity to be fatal to a claim based on [§ 12(a)(2)]." *In re Itel*, 89 F.R.D. at 116.

In the context of class actions, most courts have determined that "a defendant class should not be certified unless each member of the plaintiff class has a colorable claim against each member of the defendant class." *Akerman*, 609 F.Supp. at 375. But Karr and Priesmeyer do not have § 12(a)(2) claims against each member of the underwriter defendant class. Karr and Priesmeyer lack § 12(a)(2) privity with each member of the underwriter defendant class, as they do not allege they purchased USN stock from each of the fifteen underwriters. They therefore lack standing to assert § 12(a)(2) claims against the underwriter defendant class.

■ It is true that courts recognize an exception to § 12(a)(2)'s privity requirement in class actions. Plaintiffs lacking privity with each member of a defendant class may pursue an action against that class where a "special" or "important" legal relationship "uniting [the underwriter defendants] and justifying class treatment is shown to exist." *Akerman*, 609 F.Supp. at 375; *In re Itel*, 89 F.R.D. at 116. Such a relationship between underwriter defendants might stem from partnership, joint enterprise, control, conspiracy, or aiding and abetting since these "denote some form of activity or association on the part of the defendants that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member." *Akerman*, 609 F.Supp. at 375; *In re Itel*, 89 F.R.D. at 116.[5]

5. Defendants argue § 12(a)(2)'s privity requirement precludes certification of the plaintiff class as well. As Priesmeyer is the only lead plaintiff to have purchased in the initial public offering, and because he purchased only from Merrill, defendants contend that Priesmeyer lacks stand-

ing against Cowen and DLJ and therefore may not assert § 12(a)(2) claims against Cowen and DLJ on behalf of the plaintiff class. However, plaintiffs allege that Cowen and DLJ, together with Merrill, managed USN's initial public offering and served as co-lead underwriters. These

Plaintiffs allege the underwriter defendants sold USN stock in the initial offering pursuant to a "firm commitment" underwriting agreement. They contend this agreement establishes the requisite "special relationship" between all underwriters and permits certification of a class of these underwriters, despite Karr and Priesmeyer's lack of privity with each underwriter. However, a "firm commitment" underwriting agreement, without more, does not constitute a "special relationship". *See Akerman,* 609 F.Supp. at 373–74; *In re the Gap Stores Securities Litigation,* 79 F.R.D. 283, 307 (N.D.Cal.1978); *Endo v. Albertine,* 147 F.R.D. 164, 172–73 (N.D.Ill.1993). Plaintiffs therefore fail to allege circumstances supporting an inference of a "special relationship" between the underwriter defendants and the rest of the putative underwriter defendant class. Accordingly, the request to certify an underwriter defendant class must be denied.

### CONCLUSION

Lead plaintiffs Karr and Priesmeyer's motion for class certification is granted in part and denied in part. The court grants Karr and Priesmeyer's request to certify a plaintiff class, but denies their request to certify an underwriter defendant class. The plaintiff class is defined as:

> all persons, other than defendants, their heirs, successors and assigns and the members of the Individual Defendants' immediate families, who: (i) purchased USN common stock in the open market pursuant to the Registration Statement/Prospectus; or (ii) purchased USN common stock in the open market during the period February 4, 1998 through November 20, 1998, and who were damaged by the defendants' violations of the federal securities laws.

allegations suffice to establish the existence of a "special relationship" between Merrill, Cowen, and DLJ and permit Priesmeyer to represent a

plaintiff class asserting § 12(a)(2) claims against those three underwriters.