GANESH, L.L.C., et al., On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

COMPUTER LEARNING CENTERS, INC., Reid R. Bechtle, Charles L. Cosgrove, Harry H. Gaines and Stephen R. Reynolds, Defendants.

No. Civ.A. 98–859–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 18, 1998.

Herbert E. Milstein, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Robert P. Sugarman, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Randall H. Steinmeyer, Reinhardt & Anderson, St. Paul, MN, Jules Brody, Stull, Stull & Brody, New York City, for plaintiffs.

Geoffrey S. Stewart, Hale and Dorr LLP, Washington, D.C., for defendants CLC, Bechtle, Cosgrove, and Gaines.

Gaela K. Gehring–Flores, Paul, Weiss, Rifkind, Wharton & Garrison, Washington, D.C., for defendant Reynolds.

Mary Nicole Strimel, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Paul Thomas Gallagher, Cohen Milstein Hausfeld & Toll, Washington, DC, Elwood S. Simon, Elwood S. Simon Assoc., Birmingham, MI, for Ganesh LLC, on behalf of itself and all other similarly situated, plaintiff.

Marvin Alan Miller, Miller, Faucher, Cafferty and Wexler, LLP, Chicago, IL, for Scott L. Silver, consolidated plaintiff.

Paul Thomas Gallagher, Cohen Milstein Hausfeld & Toll, Washington, DC, for Chet Meyerson, Carmen Caiazzo, consolidated plaintiff.

Jules Brody, Stull, Stull & Brody, New York City, for Bruce Howland, Dwight Howland, Vincent Galano, consolidated plaintiffs.

Sean P. Sherman, Hale and Dorr, Washington, DC, Geoffrey S. Stewart, Hale and Dorr, Washington, DC, for Computer Learning Center, Inc., Harry H. Gaines, Reid R. Bechtle, Stephen P. Reynolds, defendants.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This consolidated securities class action comes before the Court on the Plaintiffs' Motion for Class Certification.

### Facts

The Defendant, Computer Learning Centers, Inc. ("CLC"), is a Delaware corporation with its principal executive offices in Virginia. CLC operates computer-related education and training schools throughout the United States and Canada. The Defendant, Reid R. Bechtle, is CLC's President and Chief Executive Officer as well as a member of its Board of Directors. The Defendant, Charles L. Cosgrove, is CLC's Chief Financial Officer and Vice President, while Harry H. Gaines is the Chairman of the Board. The Defendant, Stephen P. Reynolds, is another CLC Director, and he is also the Managing Partner of General Atlantic Partners II, L.P. ("GAP") and a general partner of GAP–CLC Partners, L.P.

The Consolidated Amended Class Action Complaint alleges that the Defendants issued material misstatements to and omitted material facts from the investing public in order to inflate the price of CLC common stock in violation of federal securities laws. The Lead Plaintiffs, Ganesh L.L.C. et al., allegedly purchased shares of CLC common stock at a time when its price was inflated in this way, and they now move for class certification pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Proposed Class would include all those who purchased CLC common stock from April 30, 1997 to April 6, 1998, with the exception of the company's officers and directors, those with a controlling interest in the company, and similar persons.

### Standard of Review

In order to certify a class pursuant to Rule 23, the Court must find that the Plaintiffs have satisfied all of the requirements of Rule 23(a) and at least one set of factors in Rule 23(b). *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). In the context of this case, the Plaintiffs must demonstrate (1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the members of the class; (3) that the claims or

defenses of the representatives are typical of those of the class; (4) that the representative parties will fairly and adequately protect the interests of the class; (5) that common questions of law or fact predominate; and (6) that a class action is superior to other available methods for the fair and efficient adjudication of the case. *See* Fed.R.Civ.P. 23(a) & (b)(3).

## Analysis

### I. Numerosity

■ Rule 23(a)(1) requires a proposed class to be so numerous as to render joinder impracticable. No specific number of claimants is necessary, *see Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir.1967), and there is no mechanical test that the Court can use when determining whether numerosity exists, *see Kelley v. Norfolk and Western Ry. Co.,* 584 F.2d 34, 35 (4th Cir.1978). As few as forty investors can suffice in an appropriate case. *See Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2d Cir.1972).

■ CLC had more than 7.8 million outstanding shares of stock during the Class Period, and at least 5.1 million of those shares were actively traded on the NASDAQ Exchange. Nothing in the Record casts doubt on whether a large number of investors were involved in purchasing shares in the company during the relevant time frame, and the Complaint specifically alleges that there are hundreds or thousands of members in the Proposed Class. Under these circumstances, it is beyond debate that this case satisfies the numerosity requirement in Rule 23(a). *See In re Victor Technologies Securities Litigation,* 102 F.R.D. 53, 56 (N.D.Cal. 1984), *aff'd,* 792 F.2d 862 (9th Cir.1986).

### II. Commonality and Typicality

■ Class certification further requires that common questions of law or fact exist among the putative claimants, and that the claims or defenses of the named Plaintiffs be typical of those of the class as a whole. These elements ensure that only those who can advance similar factual and legal arguments are grouped together as a class. *See Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir.1998). However, the putative claimants need not have identical factual and legal claims in all respects. *See id.* at 344. It is enough for a lawsuit to raise questions that are substantially related to the resolution of the case and that link the class members together, even though the individuals themselves are not identically situated. *See In re Gulf Oil/Cities Service Tender Offer Litig.,* 112 F.R.D. 383, 386 (S.D.N.Y.1986).

■ The Plaintiffs' Complaint specifically alleges a number of common questions of law or fact, including (1) whether the Defendants' acts and omissions violated federal securities laws; (2) whether the Defendants' statements to the investing public during the Class Period contained material misstatements or omissions; and (3) the extent to which the putative claimants have suffered damages. In the context of a case that implicates Section 10 of the Securities Exchange Act of 1934 ("the '34 Act") and Rule 10b–5 as promulgated thereunder ("10b–5"), the commonality of these questions and the typicality of the named Plaintiffs' claims cannot credibly be denied.

In order to recover under Rule 10b–5, the Plaintiffs must prove (1) that the Defendants made a false or misleading statement of material fact, or that they failed to disclose a material fact under circumstances giving rise to a duty to disclose; (2) that they did so with scienter; (3) that the Plaintiffs justifiably relied on these material misstatements or omissions; and (4) that the Defendants' acts or omissions and the Plaintiffs' reliance thereon proximately caused them harm. *See Cooke v. Manufactured Homes, Inc.,* 998 F.2d 1256, 1260–61 (4th Cir.1993) (citing 15 U.S.C. § 78j; 17 C.F.R. § 240.10b–5).

These are the elements of a 10b–5 claim, and they make clear that the Defendants' course of conduct is critically at issue in this lawsuit. Even if the members of the Proposed Class are not identically situated, both the putative claimants and their named representatives collectively and mutually share an interest in having the Court resolve whether the Defendants made any misstatements or omissions, whether they did so with

scienter, and whether the price of CLC common stock became artificially inflated as a result. *See Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 372 (D.Del.1990). Misrepresentation, scienter, and materiality are "paradigmatic common question[s]" in a securities fraud case, *id.* (quoting *Moskowitz v. Lopp*, 128 F.R.D. 624, 629 (E.D.Pa.1989)), and here they are typical to the class members and proposed representatives alike.

### III.  Adequacy of Representation

In order for class certification to issue, the Plaintiffs also have the burden of demonstrating that they will fairly and adequately protect the interests of every putative claimant. This requirement asks whether the Plaintiffs are competent to undertake the case and whether they have interests that are antagonistic to other class members. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968).

None of the parties seriously debates the first of these two considerations. The Plaintiffs are represented by counsel who have "participated in sophisticated securities class actions before and there is no allegation that they are not competent to handle this action." *Victor Technologies*, 102 F.R.D. at 57. Even so, the second of these considerations is in dispute. Due process requires named plaintiffs and lead counsel to have undivided loyalty to absent class members, and the adequacy of representation requirement is meant to preclude class certification when adversity among subgroups or other conflicts of interest exist. *See Broussard*, 155 F.3d at 337-40.

■ The Defendants contend that the Proposed Class includes a large number of members who lack standing to sue—an argument that implicitly questions whether the Plaintiffs, who allegedly have standing, can represent those who do not. The particular claim that the Defendants advance is that as many as one-third of the Proposed Class consists of "short-sellers" who, unlike traditional investors, never actually purchased or sold shares of CLC common stock and accordingly lack a legally-viable basis with which to pursue a cause of action under Rule 10b–5.[1]

As the Supreme Court has explained, standing to pursue a 10b–5 claim requires plaintiffs to have been "purchasers" or "sellers" of securities within the meaning of the '34 Act. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750–55, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Short-sellers arguably lack standing to avail themselves of the securities laws, both because they effectively sold their stock before they purchased it and because, unlike the traditional investor who hopes to profit from the company's good fortune, they seek to gain from the company's decline. *See Zlotnick v. TIE Communications*, 836 F.2d 818, 821 (3d Cir.1988).

But as the Third Circuit has held, and as no other circuit appears to have questioned, short-sellers do have standing to pursue a 10b–5 claim. The '34 Act requires a potential plaintiff to have actually purchased or sold securities. A short-seller technically does both—he sells shares short at first, and then he purchases shares later to cover the sale. *See id.* Two separate transactions are involved, and the fact that the sale occurs before the purchase does not obviate the fact that the holder of the short position is both a "purchaser" and a "seller" of the security. *See id.* at 820–21. Both transactions are in need of protection from fraud, and they equally satisfy the requirements for standing as defined by the terms of the '34 Act and as explained in *Blue Chip Stamps*. *Accord Fry v. UAL Corp.*, 84 F.3d 936, 938 (7th Cir. 1996).

"Longs" and "shorts"—that is, those who invest in stock with the expectation that its price will either rise or fall—have an identical interest in ensuring that the market price that they perceive when deciding whether to invest is not artificially influenced by material misrepresentations or omissions that they

---

1. "A short sale is a sale at a price fixed now for delivery later. A trader sells stock short when he thinks the price of the stock is going to fall, so that when the time for delivery arrives he can buy it at a [hopefully] lower price and pocket the difference." *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 859 (7th Cir.1995). In contrast, a "traditional investor seeks to profit by trading a stock the value of which he expects to rise," and is said to hold a "long position" in that security. *See Zlotnick v. TIE Communications*, 836 F.2d 818, 820 (3d Cir.1988).

have no way of detecting. The interests of the two groups are aligned in this way, subject only to some potential variation in how their damages would be calculated in the event that 10b–5 liability were otherwise established. This possible difference in damages is insufficient to constitute a disabling conflict of interest that might render class certification inappropriate. *See Eisen*, 391 F.2d at 566. In short, absent a question of competence or a conflict of interest between the named representatives and the putative claimants, the Proposed Class satisfies the adequacy of representation element.

### IV. Predominance and Superiority

■ The Court must next consider whether the Proposed Class satisfies the predominance and superiority requirements in Rule 23(b)(3). The relevant considerations are whether questions of law or fact that are common to the putative claimants predominate over individual issues in the case, *see Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir.1986), and whether a class action is superior to other ways of reaching a fair and efficient resolution of the controversy, *see In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 527–28 (S.D.N.Y.1996). The goal is to ensure that class certification occurs only when economy and efficiency are reasonably likely to result, and in a way that fairly weighs the competing interests of the parties.

The Defendants argue that whether putative claimants have standing to sue is an individualized question of law that so predominates over any common questions of law or fact as to render class certification improper. The Court has concluded that standing alone cannot preclude class certification in this case, because the long-positions and short-positions alike have standing as purchasers or sellers of securities within the meaning of the '34 Act. But the inquiry does not end there.

One of the elements of a 10b–5 claim is that the Plaintiffs justifiably relied on the material misrepresentations and omissions that the Defendants allegedly made. *See Cooke*, 998 F.2d at 1260–61. A rebuttable presumption of reliance sometimes arises when the Defendants are alleged to have committed fraud on the market. *See Basic Inc. v. Levinson*, 485 U.S. 224, 241–42, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The hypothesis is that purchasers rely on the market price of a stock as an indication of its actual value, such that they are defrauded whenever misleading public statements about the company inflate the market price above what it actually should be. *See id.* Under this assumption, positive proof of individual reliance is unnecessary.

The logic of the fraud on the market theory is that a "stock purchaser does not ordinarily seek to purchase a loss in the form of artificially inflated stock." *Id.* at 245, 108 S.Ct. 978 (quoting *Blackie v. Barrack*, 524 F.2d 891, 908 (9th Cir.1975)). But gambling on a predicted loss is precisely what a short-seller seeks to do, and the Court cannot presume that a short-seller who discounted the market price at the time of his short sale later reversed his strategy and relied on the market price when the time to cover arrived. *See Zlotnick*, 836 F.2d at 823–24. As a result, even if short-sellers have standing to sue under 10b–5, they cannot logically use a fraud on the market theory to obviate the need for positive proof of individual reliance. *See id.*

The Defendants point out in their Brief that the volume of short sales for CLC common stock continued to grow throughout the proposed Class Period. In April of 1998, six million "shares" were sold short—a number that exceeded the company's actual float. (Defendants' Brief in Opposition to Motion for Class Certification at 4.) As many as one-third of the Proposed Class consists of these short-sellers, and each of them would have to present positive proof of individual reliance and damages in order to recover. The managerial burden of conducting thousands of mini-trials on these two issues would overwhelm any common questions of law or fact and eviscerate the efficiencies that class-wide adjudication might otherwise afford. *See Basic*, 485 U.S. at 242, 108 S.Ct. 978. The Proposed Class fails to satisfy the predominance and superiority requirements in Rule 23(b)(3), and under these circumstances, class certification is inappropriate. Howev-

er, because a class that excluded those who participated in short-sale transactions could foreseeably satisfy the requirements of Rules 23(a) and 23(b)(3), the Plaintiffs will be given leave to amend their Motion for Class Certification.

### Conclusion

For the foregoing reasons, the Court will DENY the Motion for Class Certification, but will provide the Plaintiffs with twenty days in which to redefine a new class, file an amended Motion, and submit a proposed Class Certification Order.

### ORDER

For the reasons set forth in the attached Memorandum Opinion, it is hereby ORDERED that:

(1) the Motion for Class Certification by the Plaintiffs Ganesh, L.L.C., et al. is DENIED;

(2) the Plaintiffs Ganesh, L.L.C., et al. shall have twenty days in which to redefine a new class, file an amended Motion, and submit a proposed Class Certification Order; and

(3) the Clerk of the Court shall forward copies of this Order and Memorandum Opinion to all counsel of record.