Arthur FIELDS and Hardy Fields, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

BIOMATRIX, INC., Endre A. Balazs and Rory B. Riggs. Defendants.

John Snyder, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

Biomatrix, Inc., Endre A. Balazs and Rory B. Riggs, Defendants.

Robin McLeod, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

Biomatrix, Inc., Endre A. Balazs and Rory B. Riggs, Defendants.

Hoang Nguyen, Individually and On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

Biomatrix, Inc., Endre A. Balazs and Rory B. Riggs, Defendants.

Nos. CIV. 00–3541(WGB), CIV. 00–3781(WGB), CIV. 00-4001 (WGB), CIV. 00–4044(WGB).

United States District Court, D. New Jersey.

Dec. 20, 2000.

452

Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Proposed Lead Counsel.

Allyn Z. Lite, Lite DePalma Greenberg & Rivas, LLC, Newark, NJ, Proposed Liaison Counsel.

Robert J. Gilson, Riker, Danzig, Scherer Hyland & Perretti LLP, Morristown, NJ, for Defendants.

## *OPINION*

BASSLER, District Judge.

Group One, Ltd. ("Group One") moves to: (1) consolidate four related securities putative class action lawsuits; (2) appoint Group One as lead plaintiff under § 21D(a)(3)(B).of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995[1] ("PSLRA"); and (3) approve Group One's selection of the law firm of Milberg

---

1. The PSLRA governs "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(1).

Weiss Bershad Hynes & Lerach LLP to serve as lead counsel and Lite DePalma Greenberg & Rivas, LLC to serve as liaison counsel. Oral argument was heard on December 15, 2000.

There are no class members competing to be lead plaintiff. Group One's motion is, however, opposed by Defendants Biomatrix, Inc., Endre A. Balazs, and Rory B. Riggs (collectively "Defendants"). For the following reasons, Group One's motion to consolidate and to appoint lead plaintiff, lead counsel, and liaison counsel is **granted**.

## I. *FACTS*

Biomatrix manufactures, markets and sells a series of proprietary products called hylans in the form of fluids, gels and solids that are used in therapeutic medical applications and skin care. Biomatrix's leading product is Synvisc, a gel-like substance that, once injected into arthritic knees, is supposed to put off or even be a substitute for knee-replacement surgery. Biomatrix distributes Synvisc in the US, Europe and the middle East through its contractual partner Wyeth–Ayerst Laboratories, a division of American Home Products ("Wyeth").

On March 6, 2000, Biomatrix and Genzyme Biosurgery ("Genzyme") jointly announced their plans to merge. As part of the merger, Genzyme will pay to Biomatrix stockholders approximately $245 million in cash and about 16,500,000 shares of a new tracking stock designed to reflect the performance of Genzyme Biosurgery, a new division that Genzyme plans to form in connection with the merger. Under this proposed merger, Biomatrix stockholders can elect to receive in exchange for each share of Biomatrix stock either (1) $37 in cash, or (2) one share of Genzyme Biosurgery Stock.

Defendants contend that for anyone holding an equity position in Biomatrix, this merger represents a very good deal. According to Plaintiffs, however, the merger was engineered by Defendants Balazs, Riggs, and Janet L. Denlinger, Biomatrix's Executive VP, in order to cash out their investment in Biomatrix without driving down the price of the shares in the process. Additionally, Plaintiffs allege that as a result of the company's enormous production capacity coupled with the low end-user demand for Synvisc, Biomatrix was faced with the possibility of stagnant or decreasing sales and net earnings, which would prevent a runup in the price of the company's shares. To solve this problem, Plaintiffs contend that Defendants repeatedly represented to investors that Synvisc was an innovative product, that end-user sales were steadily increasing, and that the company was reporting increasing revenues from its sales of Synvisc.

Plaintiffs assert that investors did not know that the medical community was not using Synvisc to any great extent, and that throughout 1999, Biomatrix was selling Synvisc to its partner Wyeth faster than Wyeth could distribute it. By building inventory at Wyeth, Biomatrix allegedly accelerated a huge portion of 2000 end-user sales into 1999 reported revenue, thereby leading investors to believe that end-user demand was increasing. Plaintiffs claim that as a result, Defendants successfully inflated the price of Biomatrix stock to $37 and secured a merger agreement with Genzyme. By the end of the Class Period (July 20, 1999 to April 25, 2000), the company's share price dropped to $19 15/16, down 85% from a Class Period high of $37 on March 1, 2000.

Plaintiffs allege violations of Section 10(b), 20(a) of the Securities Exchange Act of 1934 as amended by the PSLRA, 15 U.S.C. § 78j(b) and 78t and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.

Defendants oppose Group One's motion for appointment as lead plaintiff; they contend that Group One's interests are adverse to those of the class because Group One, although an institutional investor, is a short seller[2] rather than a genuine long investor in

---

**2.** The Third Circuit has explained short selling as follows:

> Where the traditional investor seeks to profit by trading a stock the value of which he expects to rise, the short seller seeks to profit by

trading stocks which he expects to decline in value.... Short selling is accomplished by selling stock which the investor does not yet own; normally this is done by borrowing shares from a broker at an agreed upon fee or

Biomatrix stock. During oral argument, Group One contended that while it has sold short, it was mostly a net long investor.

## II. *DISCUSSION* [3]

### A. *Consolidation*

Consolidation is appropriate where there are actions involving common questions of law or fact. Fed.R.Civ.P. 42(a); *see Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.1990), *cert. denied*, 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990). The PSLRA provides that where there is more than one action on behalf of a class asserting substantially the same claim or claims, a court shall not appoint a lead plaintiff until *after* the court decides the motion to consolidate. 15 U.S.C. § 78u–4(a)(3)(B)(ii).

Group One asserts that each of the four actions asserts claims on behalf of the purchasers of Biomatrix shares for alleged violations of the Exchange Act during the relevant time period, that each actions name the same defendants and involves the same factual and legal issues.

Defendants do not object to Plaintiffs' motion to consolidate the four cases. Therefore, the motion for consolidation is **granted**.

### B. *Appointment of Lead Plaintiff*

#### 1. *Standing*

■ As a threshold matter, Group One argues that Defendants do not have standing under the PSLRA to object to the appointment of lead plaintiff. There is some disagreement among the courts on this issue. *Compare King v. Livent, Inc.*, 36 F.Supp.2d 187, 190–91 (S.D.N.Y.1999) ("[P]ermitting de-

fendants to make limited facial challenge to a plaintiff's motion for appointment of lead counsel does not disrupt the statutory framework Congress set forth in § 78u–4(a)(3)(B)(iii). 'Rather it is consistent with the goal of alleviating the abuses of the class action device in securities litigation.' ... On balance, a therapeutic appointment process as envisaged by the PSLRA will work better with more information than less") *with Gluck v. CellStar Corp.*, 976 F.Supp. 542, 550 (N.D.Tex.1997) ("[t]he statute is clear that only potential plaintiffs may be heard regarding appointment of a Lead Plaintiff"); *see also In re Milestone Scientific Securities Litigation*, 183 F.R.D. 404, 414 n. 14 (D.N.J. 1998) (suggesting that defendants lack standing).

Even if Defendants do not have standing, Defendants point out that the Court may, however, *sua sponte* consider the issues raised by them. *See Takeda v. Turbodyne Technologies, Inc.*, 67 F.Supp.2d 1129, 1138 (C.D.Cal.1999) (denying standing to defendants but noting that "[n]evertheless, the court may sua sponte raise and address certain of the concerns addressed in defendants' statement"); *see also In re The First Union Corp. Securities Litigation*, 2000 U.S. Dist. LEXIS 2267, *5 (W.D.N.C. January 28, 2000) ("Regardless of whether Defendants formally have standing (in which case this Court is obligated to consider their arguments), nothing in the Reform Act prevents this Court from considering the arguments raised and authorities cited by Defendants"). Plaintiffs fail to address this alternative.

#### 2. *Discovery*

According to Defendants, the complaint is almost entirely copied from letters written to

the price of the stock rises, so too does the short seller's loss, and since there is no cap to the stock's price, there is no limitation on the short seller's risk. There is no time limit on this obligation to cover.

*Zlotnick v. TIE Communications*, 836 F.2d 818, 820 (3d Cir.1988).

rate of interest. At this point, the investor's commitment to the buyer of the stock is complete; the buyer has his shares and the short seller his purchase price. The short seller is obligated, however, to buy an equivalent number of shares in order to return the borrowed shares. In theory, the short seller makes this covering purchase using the funds he received from selling the borrowed stock. Herein lies the short seller's potential for profit: if the price of the stock declines after the short sale, he does not need all the funds to make his covering purchase; the short seller then pockets the difference. On the other hand, there is no limit to the short seller's potential loss: if

**3.** The Court did not consider Defendants' surreply in ruling on Group One's motion because (1) Defendants failed to seek permission from the Court prior to filing the sur-reply; and (2) Group One has not had the opportunity to respond to Defendants' sur-reply.

members of Genzyme's board of directors and to the SEC by a short seller, Edward W. "Rusty" Rose, III, and his associates, who have been trying unsuccessfully for months to get Genzyme's board to cancel the merger in order to cause a decline in Biomatrix stock prices. Def.'s Opp'n Br., at 7–10. Further, Defendants attack the veracity of the allegations contained in the *Fields* complaint and accuse Rose's associates of corporate espionage and of systematically making false and misleading allegations against Biomatrix on Internet message boards. *Id.* at 10–13. Several of the messages purportedly advise investors that the writer is planning a securities fraud class action lawsuit against Biomatrix and that interested investors should contact Sam Rudman at the Milberg Weiss firm.

The timing of this lawsuit, Defendants claim, is highly suspicious and is yet another effort to prevent the Genzyme merger and trash the value of Biomatrix stock. *Id.* at 17. The suit was filed one day after Wyeth posted its second quarter 2000 numbers for Synvisc. Wyeth's product sheet for analysts showed that Synvisc sales to end-users had reached an all time high. Fields' Aff., Ex. 31. Moreover, Defendants argue that the named plaintiffs Arthur and Hardy Fields are also short sellers with links to Rose and his associates. Def.'s Opp'n Br., at 18–19.

Defendants assert that without any discovery, they cannot state whether Group One has any direct connection to the Fields plaintiffs or to Rose and his associates. Consequently, Defendants urge that the Court defer ruling on Plaintiff's motion for appointment of lead plaintiff and lead counsel until adequate discovery of all relevant facts has been taken.

Even without further developing the facts, Defendants maintain that Plaintiffs' motion should be denied because Group One is a short seller and only genuine long investors, represented by counsel who are not in any way involved with shorts, should be permitted to control this suit.

In response, Group One argues that Defendants' charges are meritless, based on conjecture and speculation, and have nothing to do with the issue at hand. Group One also challenges Defendants' request that the Court conduct some kind of wide-ranging inquiry into the bases of the pending lawsuit. It argues that Defendants can raise these issues when the parties are engaged in discovery and not before a consolidated complaint is filed and lead plaintiff is appointed.

The Court agrees with Group One that whether Plaintiffs' complaints have any merit is irrelevant to the question of what plaintiff would most adequately represent the interests of the class. Further, as Group One points out, the pending securities class actions do not challenge or seek to enjoin the merger with Genzyme.

Moreover, 15 U.S.C. § 78u–4(a)(3)(B)(iv) provides: "discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted *by a plaintiff* only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." (emphasis added). In view of the express statement in the statute that authorizes discovery to be conducted by a plaintiff, Defendants are not entitled to take discovery on this issue. *See Fischler v. AmSouth Bancorporation*, 1997 WL 118429, at *2 (M.D.Fla. February 6, 1997) ("The plain language of the [PSLRA] dictates only members of the plaintiff class may offer evidence to rebut the presumption in favor of the most adequate plaintiff.")

Therefore, Defendants' request for discovery prior to the Court's ruling on Group One's motion is **denied**.

### 3. *Standard for Appointment of Lead Plaintiff*

The PSLRA provides that "as soon as practicable" after a decision on a motion to consolidate is rendered, "the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions ..." 15 U.S.C. § 78u–4(1)(3)(B)(ii).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C.

§· 78u–4(a)(3)(A)(i). Plaintiff in the *Fields* action caused notice to be published on the *Business Wire* on July 21, 2000.[4] *See* Rudman Aff., Ex. B.

Second, the PSLRA provides that within 90 days after publication of the notice, "the court shall consider any motion made by a purported class member in response to the notice, . . ., and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . ." 15 U.S.C. § 78u–4(a)(3)(B)(i).

In determining the "most adequate plaintiff," the PSLRA provides:

[T]he court shall adopt a *presumption* that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that

(aa) has either filed the complaint or made a motion in response to a notice . . .

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) (emphasis added).

Looking, as required under subsection (cc), to Rule 23 of the Federal Rules of Civil Procedure, that rule provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

■ A full examination of the remaining Rule 23 factors " 'should be left for consideration on a motion for class certification.' " *Id.* (citing *Fischler v. AmSouth Bancorp.,*

1997 WL 118429, *2 (M.D.Fla.1997); *see also Gluck,* 976 F.Supp. at 546 ("Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing. There is no need to require anything more than a preliminary showing at this stage")). Therefore, of the four prerequisites to class certification, the focus is only on the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements. *Takeda v. Turbodyne Technologies, Inc.,* 67 F.Supp.2d 1129, 1136 (C.D.Cal.1999).

■ Under Rule 23(a)(3), the Court must determine whether the proposed class representative's factual or legal stance is characteristic of that of other class members. *Weiss v. York Hospital,* 745 F.2d 786, 809–10 & n. 36 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777 (1985). The typicality requirement demands that the representative's claims "arise from the same event or practice or course of conduct that gives rise to the claims of the class members" and the claims are "based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 923 (3d Cir.1992); *Morisky v. Public Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493 (D.N.J.2000); *Grossman v. First Pennsylvania Corp.,* 1991 WL 222071, at *4 (E.D.Pa. Oct. 23, 1991) ("If the claims of the class and the named plaintiff arise from the same conduct of the defendants, typicality is met").

■ Typical, however, does not mean identical. *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.), *cert. denied sub nom. Weinstein v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); *Gruber v. Price Waterhouse,* 117 F.R.D. 75, 79 (E.D.Pa.1987). "Even pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *In re Cephalon Securities Litigation,* 1998 WL 470160, at *2 (E.D.Pa. Aug. 12, 1998) (citing *Baby Neal v. Casey,* 43 F.3d 48, 58 (3d Cir.1994)). The typicality requirement is construed liberally as long as there is

---

4. The *Business Wire* has been recognized as a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or

wire services." *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 62–64 (D.Mass.1996); *see also In re Milestone Scientific Securities Litigation,* 183 F.R.D. at 413.

no express conflict between the class representative and the class. *See Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir. 1977).

■ Rule 23(a)(4) mandates that the named representative be able to "fairly and adequately protect the interests of the class." The importance of this requirement is to ensure that the due process rights of the putative class members are not compromised as these class members will be bound by a class action judgment. *In re LILCO Securities Litigation,* 111 F.R.D. 663 (E.D.N.Y. 1986). The adequacy of representation is generally tested against two factors: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the plaintiff must not have interests antagonistic to those of the class. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415 (1975); *see Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

"The typicality inquiry under Rule 23(a)(3) and the alignment of interest inquiry under Rule 23(a)(4) tend to merge." *Weikel v. Tower Semiconductor Ltd.,* 183 F.R.D. 377, 389 (D.N.J.1998) (citing *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 632 (3d Cir. 1996), *aff'd* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("We think that typicality is more akin to adequacy of representation: both look to the potential for conflicts in the class")).

Once the plaintiff with the largest financial interest files the complaint or moves to be appointed lead plaintiff and meets the typicality and adequacy requirements of Rule 23, that plaintiff is presumed by the court to be the most adequate plaintiff to represent the class. The presumption of the most adequate plaintiff is rebuttable

> only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff –
>
> (aa) will not fairly and adequately protect the interests of the class; or

> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

**4. *Analysis of Typicality and Adequacy***
**a. *Presumption of Adequacy***

Defendants do not dispute Group One's assertion that, in accordance with 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa) and (bb), its motion is timely or that it has a significant financial interest in this case.[5] Group One alleges that it otherwise meets the typicality requirement of Rule 23 because like all other class members, it: (1) purchased Biomatrix shares during the Class Period; (2) purchased Biomatrix shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages as a result. Group One's claims are typical of other class members since its claims and the claims of other class members arise out of the same course of events. Indeed, if Group One succeeds in proving that its injury and losses resulted from Defendants' allegedly fraudulent scheme, it necessarily will prove the conduct underlying the claims of all putative class members. *See Gluck v. CellStar Corp.,* 976 F.Supp. 542, 546 (N.D.Tex.1997).

Additionally, Group One contends that the adequacy requirement is met because its counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Further, it claims that its interests are clearly aligned with that of the other class members, and that there is no evidence of any antagonism between Group One's interests and that of the other class members. Finally, "as an institutional investor, it is accustomed to acting in the role of a fiduciary, and its experience with investing and financial matters will only benefit the class." *Id.* Therefore, Group One is entitled to the presumption that it is the most adequate lead plaintiff.

■ This finding does not preclude other Plaintiffs or Defendants from later contesting class certification on these bases. *Id.* at 547 (citing *Greebel v. FTP Software, Inc.,* 939

**5.** According to Group One, its estimated losses equals $1.6 million.

F.Supp. 57, 60–61 (D.Mass.1996) ("[The court's] determination to appoint a person or persons as lead plaintiff must be without prejudice to the possibility of revisiting that issue in considering a motion for class certification.")); *Koppel v. 4987 Corp.*, 1999 WL 608783, at *8 (S.D.N.Y. Aug. 11, 1999) ("It should be noted, however, that such a finding [that Rule 23 is met] does not prejudice defendants' capacity to contest plaintiff's adequacy on a motion for class certification"), *aff'd in part, rev'd in part,* 167 F.3d 125 (2nd Cir.1999).

### b. *Rebutting Presumption of Adequacy*

Defendants, however, challenge Group One's lead plaintiff motion based on the Rule 23 typicality and adequacy requirements. Specifically, Defendants maintain that Group One and others are short sellers whose real goal in this litigation is to undermine the Genzyme merger and whose interests are directly adverse to the interests of the class as a whole; they believe that the genuine investors in Biomatrix's stock will be harmed if the Genzyme deal is called off. Specifically, Defendants allege that short sellers are subject to unique defenses that make them atypical or inappropriate class representatives, and are therefore *per se* atypical.[6]

Because there are no cases that squarely address whether short sellers meet the Rule 23 adequacy and typicality requirements when determining the appointment of lead plaintiff, Group One and Defendants both look for guidance primarily to decisions involving motions for class certification.

Defendants rely on *Zlotnick v. TIE Communications,* 836 F.2d 818 (3d Cir.1988)

("*Zlotnick I*") and *Weikel v. Tower Semiconductor Ltd.,* 183 F.R.D. 377 (D.N.J.1998) to support their position. In *Zlotnick I,* the plaintiff claimed that the defendants' misrepresentations artificially inflated the price of a stock which he had sold short. The district court dismissed the plaintiff's case for failure to state a claim because the complaint failed to plead reliance. On appeal, the plaintiff requested that the court presume reliance based on the defendants' alleged commission of a "fraud on the market."[7] *See Peil v. Speiser,* 806 F.2d 1154 (3d Cir.1986) (noting that in certain cases, showing of a "fraud on the market" may create a rebuttable presumption of reliance in favor of the plaintiff). The Third Circuit concluded that it would "presume reliance only where it is 'logical to do so.'" *Zlotnick,* 836 F.2d at 822 (citing *Peil,* 806 F.2d at 1161, n. 11). The Circuit found that in that case, it was not logical to presume that the purchaser who sells short relies on the assumption that the price of the stock reflects all available information given that such an investor acts on the belief that the price of a stock overestimates its true value and does not reflect all available information. *Id.* at 823.

While the Third Circuit declined to grant a presumption of reliance based merely on the plaintiff's allegation that the defendants committed a "fraud on the market," it vacated the dismissal of the complaint and remanded the case to allow the plaintiff the opportunity to prove his reliance.

In *Weikel,* 183 F.R.D. 377, lead plaintiffs moved for class certification. One of the lead plaintiffs, Meruelo, had made some short sales during the class period. In determin-

---

**6.** Group One misconstrues Defendant's argument to be that sophisticated investors are not adequate to serve as lead plaintiff because sophisticated investors are never entitled to invoke the fraud on the market theory. Defendants, however, do not disagree that sophisticated investors are entitled to invoke the fraud on the market theory; rather, Defendants contend only that because such investors are subject to unique defenses, their claims are atypical of the class.

**7.** "[T]he 'fraud on the market' theory of reliance permits a plaintiff to pursue a § 10(b) claim without showing direct reliance on the misstatement or omission; indirect reliance may be presumed." *Danis v. USN Communications, Inc.,*

189 F.R.D. 391, 396 (N.D.Ill.1999) (citing *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). In *Basic,* the Supreme Court explained that:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business ... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements ...

*Basic,* 485 U.S. at 241–42, 108 S.Ct. 978.

ing whether to certify Meruelo as a class representative, the court noted that according to *Zlotnick I*, it appeared that a short seller cannot benefit from the presumption of reliance created by the "fraud on the market" theory. *Id.* at 392. "Therefore, to fully recover for any loss Meruelo may have suffered, Meruelo will have to prove actual reliance on the alleged misrepresentations of the Defendants." *Id.* Because of this, among other distinctions between the class and Meruelo, the court found Meruelo to be unsuitable to serve as a class representative. Citing to *Weikel*, Defendants claim that because the fraud on the market presumption of reliance is unavailable to short sellers, Group One is subject to unique defenses that make its claims atypical of the class.

Although under *Zlotnick I*, a short seller cannot benefit from the presumption of reliance created by the fraud on the market theory, the existence of individual questions of reliance does not render atypical the claims of short seller lead plaintiffs. *See Eisenberg*, 766 F.2d 770. In *Eisenberg*, the Circuit held that the district court had abused its discretion in refusing to certify a class on the grounds that individual questions of reliance existed. *Id.* at 786. In so holding, the court noted that "[t]he presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3) or that the representative's claims are not typical." *Id.*; *see also In re Cephalon Securities*, 1998 WL 470160, at *3 (concluding that the existence of individual questions of reliance do not render atypical the claims of lead plaintiffs, one of whom was a short seller); *Zlotnick v. TIE Communications, Inc.*, 123 F.R.D. 189 (E.D.Pa.1988) ("*Zlotnick II*") (on remand from the Third Circuit, finding that requirements of Rule 23(a)(3) and (a)(4) were met notwithstanding, and without discussion of the fact that plaintiff was short seller).

Further, in *Danis v. USN Communications, Inc.*, 189 F.R.D. 391 (N.D.Ill.1999), the lead plaintiff Thomas Karr ("Karr") and Jack Priesmeyer moved for class certification. In opposing the motion, the defendants argued that the lead plaintiffs did not meet Rule 23's typicality and adequacy requirements because they were subject to unique defenses. Specifically, Defendants claimed that because Karr made short sales, he was uniquely subject to the defense of lack of reliance.

Just as in this case, the court recognized that in addition to Karr's initial short sales, Karr had also made ordinary purchases during the class period. Moreover, it noted that "[t]he fact that Karr may have used somewhat distinctive buying strategies does not render him atypical with respect to this claim of overarching fraud." *Id.* at 397. Therefore, the court held that Karr's § 10b–5 claims were typical of those of the class because he alleged that the defendants fraudulently disseminated material misrepresentations concerning USN's operations.

Similarly, in *Grossman v. First Pennsylvania Corp.*, 1991 WL 222071 (E.D.Pa. Oct. 23, 1991), the court noted

[d]efenses which the defendants could raise against the named plaintiff individually, such as reliance or damages, but not against the class will not defeat typicality. [*Eisenberg*, 766 F.2d at 786]. Where the named plaintiff's right to recover may ultimately be affected by a unique defense but it will not affect his ability to present the case on the liability of the defendants to the plaintiff class, his claim is not atypical.... Basically, this issue or [sic] reliance or lack thereof is a question of fact which is not appropriately resolved at this stage. It is a defense and can be raised when it is proper to raise a defense.

*Id.* at *4; *see also Zeffiro v. First Pa. Banking and Trust Co.*, 96 F.R.D. 567, 570 (E.D.Pa.1983) (recognizing that where representative plaintiff and other members of class share an interest in prevailing on similar legal claims, particular differences in amount of damages claimed or of availability of certain defenses against class representative may not render his or her claims atypical).

After *Eisenberg*, however, which was decided in 1985, in 1988, the Supreme Court decided *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). For whatever reason, Defendants do not rely on or cite to *Basic.* In *Basic,* the Court held in

part, that when a plaintiff asserting a Rule 10b–5 claim alleges fraud on the market, the presumption of reliance is a rebuttable one. In dicta, the Court stated: "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones." *Basic*, 485 U.S. at 242, 108 S.Ct. 978; *see also Ganesh, L.L.C. v. Computer Learning Centers, Inc.*, 183 F.R.D. 487, 491 (E.D.Va.1998) (denying class certification concluding that the proposed class, one-third of which were short sellers, failed to satisfy the predominance and superiority requirements in Rule 23(b)(3) because "each of them would have to present positive proof of individual reliance and damages in order to recover. The managerial burden of conducting thousands of minitrials on these two issues would overwhelm any common questions of law or fact and eviscerate the efficiencies that classwide adjudication might otherwise afford." (citing *Basic*, 485 U.S. at 242, 108 S.Ct. 978)).

Despite the statement in *Basic*, courts still consider *Eisenberg* good law. *See e.g. Zlotnick II*, 123 F.R.D. at 194; *In re Cephalon Securities*, 1998 WL 470160, at *4; *Grossman*, 1991 WL 222071, at *4. Indeed, some courts have expressly concluded that *Basic* was not intended to overrule the Third Circuit's holding in *Eisenberg*. *See Zlotnick II*, 123 F.R.D. at 194 (finding that reasoning in *Basic* did not conflict with holding in *Eisenberg* because *Eisenberg* court "qualified its holding that the class action should go forward by stating that the case before it 'did not present extraordinarily complex questions of causation or reliance.'" (citing *Eisenberg*, 766 F.2d at 786)); *Booth v. Connelly Containers, Inc.*, 1990 WL 61333, at *5 (E.D.Pa. May 7, 1990)(same).

The Court agrees that *Eisenberg* is still good law. In contrast to the Third Circuit case in which the court held that the presence of individual questions of reliance do not render a representative's claims atypical presumably under Rule 23(a)(3), the Supreme Court's dicta arose in the context of determining when individual issues would overwhelm the common ones presumably under Rule 23(b)(3). Although reliance is a factor to be considered under Rule 23(a)(3) as well as Rule 23(b)(3),[8] the existence of individualized questions of reliance appears to more often preclude class certification under Rule 23(b)(3) [9] than under Rule 23(a)(3).

For example, the *Ganesh* court found that the proposed class, one-third of which were short sellers, had failed to satisfy the predominance and superiority requirements in Rule 23(b)(3) because "each of them would have to present positive proof of individual reliance and damages in order to recover." Nevertheless, when examining adequacy of the proposed class under Rule 23(a)(4), the court held that the interests of "longs" and "shorts" were aligned in that they both "have an identical interest in ensuring that the market price that they perceive when deciding whether to invest is not artificially influenced by material misrepresentations or omissions that they have no way of detecting." *Ganesh*, 183 F.R.D. at 490–91. Despite the potential variation in how damages are calculated, the court concluded that "absent a question of competence or a conflict of interest between the named representatives and the putative claimants, the Proposed Class satisfies the adequacy of representation element." *Id.* at 491.

As in *Ganesh*, in *Zlotnick II*, the court determined that the requirements of Rule 23(a)(3) and (a)(4) were met; nevertheless, the court denied the plaintiff's motion for class certification finding that under Rule 23(b)(3), individualized questions of fact

---

**8.** *See Eisenberg*, 766 F.2d at 786 ("[t]o a large extent, [the typicality requirement of Rule 23(a)(3)] overlaps the requirements that the named representatives adequately represent the class, that there be common questions of law and fact, that such questions predominate, and that the class action be a superior means of resolution").

**9.** Of course, the Court is deferring examination of the remaining requirements of Rule 23, except for Rule 23(a)(3) and (a)(4) until the lead plaintiff moves for class certification. *See* discussion *supra*.

would predominate over common issues at trial because each class member's proof of reliance would be highly individualized.

Having determined that *Eisenberg* is still good law, the Court finds that the fact that Group One may have made some short sales does not render its claims atypical of the other plaintiffs in the putative class or subject to unique defenses such that it is incapable of adequately representing the case. Therefore, Defendants have not successfully rebutted the presumption that Group One is the most adequate plaintiff.

### c. *Proof of Inadequacy*

Finally, Group One correctly argues that contrary to the mandates of 15 U.S.C. §§ 78u–4(a)(3)(B)(iii)(II) and (a)(3)(B)(iv), Defendants have failed to provide *proof* that the proposed lead plaintiffs are inadequate. Accordingly, Defendants seek discovery. Under the PSLRA, however, discovery relating to whether a member is the most adequate plaintiff may be conducted only upon the demonstrating a "reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iv). As discussed above, under the express language of 15 U.S.C. § 78u–4(a)(3)(B)(iv), discovery is only authorized to be conducted "by a plaintiff."

### C. *Appointment of Lead Counsel*

"The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v).

Other than its contentions that the Court defer ruling on Group One's motion for appointment of lead plaintiff and lead counsel until adequate discovery is taken and that lead counsel cannot be aligned with short sellers, Defendants raise no other specific objection to Milberg Weiss Bershad Hynes & Lerach LLP as lead counsel. That is, Defendants do not claim that the Milberg firm is incompetent or otherwise unqualified. Similarly, Defendants have not addressed or raised any objections to the ability or qualification of the Lite DePalma firm to serve as liaison counsel.

### III. *CONCLUSION*

For the reasons noted herein, Group One's motion for consolidation, for appointment as lead plaintiff, for Milberg Weiss Bershad Hynes & Lerach LLP to serve as lead counsel, and for Lite DePalma Greenberg & Rivas, LLC to serve as liaison counsel is **granted**. An appropriate Order follows.