Sik–Lin **HAUNG**, et al.

v.

**ACTERNA CORPORATION**, et al.

**Civ.A. No. DKC 2003–1131.**

United States District Court,
D. Maryland.

March 18, 2004.

James J. O'Neill, III, John Bucher Isbister, Tydings and Rosenberg LLP, Baltimore, MD, Sean Michael Handler, Schiffrin and Barroway LLP, Bala Cynwyd, PA, for Plaintiff.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this securities fraud class action is the motion of Joseph De Leo and Stan Andrews for (1) appointment as Lead Plaintiffs and (2) approval of Lead Plaintiffs' selection of Lead Counsel and Liaison Counsel. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the court will deny the motion and require renewed notice.

## I. Background

On April 16, 2003, a securities fraud class action was filed against Acterna Corporation (Acterna) and five of its highest-level, executive officers and/or directors. Acterna is a publicly-held Delaware corporation with its principal place of business in Germantown, Maryland. Acterna provides test and management services for optical transport, access, and cable networks to customers located around the world.

The first suit in this class action, *Huang et al. v. Acterna Corp., et al.,* Civil Action No: DKC–03–1131, was filed by Sik–Lin Huang, on behalf of a class consisting of all those who purchased or otherwise acquired the common stock of Acterna between August 1, 2001 and October 31, 2002, and who were damaged thereby. The complaint alleges violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5 under the Act, and is brought pursuant to the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u–4, which codifies the Securities Exchange Act and allows private class actions to enforce the Act. The class members allege that Defendants issued false and misleading statements that failed to disclose that Acterna's goodwill was substantially impaired, that Acterna lacked adequate internal controls necessary to ascertain its true financial condition and that, as a result, the value of Acterna's net income and financial results were materially overstated at all times during the class period. *See* paper no. 1, ¶ 33. By relying on Defendants' statements, the class members allege to have suffered damages in connection with their respective purchases and sales of Acterna's common stock during the class period.

Presently before the court is the unopposed motion of Joseph De Leo and Stan Andrews ("the Movants") requesting the court to (1) appoint them as co-Lead Plaintiffs of the class action; and (2) approve their selection of Schiffrin & Barroway, LLP as Lead Counsel and Tydings & Rosenberg, LLP as Liaison Counsel.

## II. Analysis

In 1995, Congress enacted the PSLRA in response to perceived abuses in securities fraud class actions. The PSLRA was intended to prevent "lawyer-driven" litigation, and to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 43–44

(S.D.N.Y.1998). In keeping with this intent, the PSLRA imposes notice requirements on plaintiffs and provides guidance for the selection of the lead plaintiff. Under the notice provisions of the PSLRA, the plaintiff or plaintiffs in a securities class action shall, within 20 days of filing their complaint, publish notice of the pendency of the suit, "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u–4(a)(3)(A)(i). The notice must inform the members of the purported class of the pendency of the action, the claims asserted, and the purported class period. *Id.* § 78u–4(a)(3)(A)(i)(I). Within 60 days of publication, any member of the purported class may move the court to serve as lead plaintiff. *Id.* § 78u–4(a)(3)(A)(i)(II).

> Upon receiving a motion, the court shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereinafter in this paragraph referred to as the "most adequate plaintiff").

*Id.* § 78u–4(a)(3)(B)(i). The PSLRA creates a "rebuttable presumption" that the most adequate plaintiff is the "person or group of persons" who—

> (aa) has either filed the complaint or made a motion in response to notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u–4(a)(3)(B)(iii)(I). This presumption may be rebutted only with proof by a member of the purported class that the presumptively most adequate plaintiff (1) will not fairly and adequately protect the interests of the class or (2) is subject to unique defenses that render him incapable of adequately representing the class. *See id.* § 78u–4(a)(3)(B)(iii)(II). Once the most adequate plaintiff is selected by the court, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u–4(a)(3)(B)(v). In this case, the motion for lead plaintiff and for approval of selection of lead counsel is unopposed. Nonetheless, the court will proceed with the analysis. *See In re Oxford Health Plans*, 182 F.R.D. at 45 ("The PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation.").

## A. Notice Requirements

The movants rely on the notice published in the first filed action, *Huang v. Acterna Corporation, et al.*, Civil Action No. DKC 03–CV–01131. The notice was timely as published on April 26, 2003, in *The New York Times*, ten days after the action was commenced. It provided in full:

> Notice is hereby given that a class action lawsuit was filed in the United States District Court for the District of Maryland on behalf of all purchasers of Acterna Corporation ("Acterna" or the "company") (NASDAQ:ACTR) from August 1, 2001 through October 31, 2002, inclusive (the "Class Period"). The complaint alleges that Acterna, in an effort to grow its communications testing business, began to acquire market competitors and as a result, assumed a tremendous amount of good will. The Company repeatedly characterized its goodwill as unimpaired and continuously portrayed itself as having a future in the communications test sector, despite experiencing a record decrease in its business. Eventually, the Company revealed that it would have to take a charge of $388 million for impaired goodwill. By this time, the stock price had fallen to $.30 per share, down from a Class Period high of $6.03 per share. If you are a member of the class described above, you may, not later that (sic) June 26, 2003, move the Court to serve as lead plaintiff of the class, if you so choose. In order to serve as lead plaintiff, however, you must meet certain legal requirements. CONTACT: Schiffrin & Barroway, LLP.
>
> \* \* \* \* \* \*
>
> 1–888–299–7706 or by email at info@sbclasslaw.com

█ Although the PSLRA gives little indication of how much detail is required in the

notice, it is understood to require enough notice to inform the reader of the general nature of the claim and to provide an avenue for further inquiry. *See In re Lucent Tech., Inc.,* 194 F.R.D. 137, 147–148 (D.N.J.2000). The notice in this case provides only the broadest indication that the company's impaired goodwill is based on a failure to disclose. It does not inform the reader that the legal basis of the claim is an alleged violation of the Securities Exchange Act. Even more disturbing, the notice does not provide any information upon which a reader may rely to conduct an independent inquiry into the matter. It does not provide a case name or docket number, the name of the plaintiffs or of the judge to whom the case was assigned, or the address of the court. As it is, the notice provided appears more likely intended to "accumulate members of the class rather than to inform." *See In re Lucent Tech.,* 194 F.R.D. at 147. The only way for the reader, or a member of the purported class, to learn more about the case or the legal requirements of a lead plaintiff is to contact counsel directly or through the establish hotline number or email listed at the bottom of the notice. The notice reserves for the attorney the ability to screen lead plaintiffs and discourage greater participation by activist investors. This is precisely what the PSLRA seeks to avoid.

Additionally, the PSLRA requires publication in a "widely-circulated national business-oriented publication or wire service." Although it does not clearly define this phrase, the publication requirement expresses Congress' intent that publication be "reasonably calculated to reach, at the least, sophisticated and institutional investors." *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 64 (D.Mass. 1996). The Movants argue that *The New York Times* is an acceptable publication, but the authority they provide as support does not even address *The Times* at all. Based on the showing made thus far, the court is not satisfied that *The New York Times* meets the standards of the PSLRA. For the foregoing reasons, movants have failed to satisfy the notice requirements of the PSLRA.

## B. Appointment of Lead Plaintiff

Notwithstanding the inadequacy of the notice publication, the court will review the remaining requirements so as to bring attention to any additional inadequacies that may prevent approval of the Movants. As state above, the PSLRA permits a rebuttable presumption of the most adequate plaintiff once all of three prongs are satisfied. The Movants have easily satisfied the first prong as their motion was filed not later than 60 days after publication of the notice. As for the second prong, the Movants claim that their combined losses of approximately $84,169 represent the largest financial interest of all known class members. In support, the Movants submit an affidavit as well as documentation and signed certifications regarding their transactions in Acterna securities. They further rely on the lack of opposition to the motion. Once again, the inadequacy of the PSLRA is apparent as it neither explains the term "largest financial interest" nor provides guidance as to how such a determination is made. However, in keeping with the purpose of the Act, the courts typically require more than an unopposed claim, by an individual, that he/she has suffered the largest financial loss. As the Central District of California has stated:

> Ideally, courts will appoint institutional investors with large holdings in the stock as lead plaintiff. As Congress and academics have noted, institutional investors have incentives to monitor their suits closely because of their substantial stakes in the stock at issue, thereby eliminating frivolous tactics and settlements that inflate attorneys' fees. *See* S.Rep. No. 104–98, at 6, 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685, 690 ("Numerous studies show that investors recover only 7 to 14 cents for every dollar lost as a result of securities fraud.").

*Yousefi v. Lockheed Martin Corp.,* 70 F.Supp.2d 1061, 1066 (C.D.Cal.1999).

Here, the movants are not institutional investors, but individuals who apparently purchased or sold securities during the proposed class period. While their losses of approximately $84,000 are certainly substantial on their own, it seems peculiar that,

given the public nature of Acterna and its alleged loss of $322 million in goodwill, there are no institutional investors, or any other investors at all, with greater financial losses. Surely such entities can be easily identified by defendants and submitted to plaintiffs so that a proper notice of the suit can be sent directly to them.

Finally, as to the third standard, compliance with Fed.R.Civ.P. 23 requires the proposed lead plaintiffs to make a preliminary showing that they satisfy the typicality and adequacy requirements of Rule 23. *See A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 571 (D.N.J.2003). In determining whether the movants have met the typicality requirements, the courts look to whether their claims are based on losses or legal theories markedly different from those of the claims of the other members of the class. *See id.* at 571. In assessing whether the adequacy requirement has been met, courts are to look at the ability and incentive of the movant to represent the claims of the class vigorously, whether there is a conflict of claims and whether the movant has obtained adequate counsel. *Id.*

Because a determination of the most adequate plaintiff is not possible at this time, it is premature to evaluate whether the Movants have made a preliminary showing that they satisfy the typicality and adequacy requirements of Rule 23. The court will therefore defer such determination until a later time after potential class members have received adequate notice of the pendency suit and the opportunity to move the court for appointment as lead plaintiff.

Accordingly, because the PSLRA requirements have not been met, plaintiff must republish, in an appropriate publication, a more informative notice and send such notice directly to the largest financial and institutional investors as identified by defendants. Once accomplished, the court will be in a better situation to evaluate the adequacy of the Movants or of any others who move the court to be appointed lead plaintiffs.

## C. Appointment of Counsel

15 U.S.C. § 78u–4(a)(3)(B)(v) requires the most adequate plaintiff to select and retain counsel, subject to approval of the court, to represent the class. The Movants have submitted supporting material that appears to demonstrate that counsel is "qualified, experienced, and generally able to conduct the proposed litigation," and without interests antagonistic to those of the class. *See Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 457 (D.N.J.2000) (discussing requirements of proposed lead counsel). However, because a lead plaintiff has not been appointed, the court cannot, at this time, approve or recommend the proposed lead counsel or liaison counsel.

## III. Conclusion

For the reasons set forth above, the motion of Joseph De Leo and Stan Andrews to be appointed Lead Plaintiffs and for approval of their selection of Lead Counsel and Liaison Counsel will be denied. A separate order will follow.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, IT IS this 18th day of March, 2004, by the United States District Court for the District of Maryland, ORDERED that:

1. The Motion of Joseph DeLeo and Stan Andrews To Be Appointed Lead Plaintiffs And For Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel BE, and the same hereby IS, DENIED;

2. Defendants provide to Plaintiffs, within ten days, a list of its largest investors, institutional and otherwise, who purchased or sold securities during the proposed class period;

3. Plaintiffs publish renewed notice, and send copies of such notice to those investors identified by Defendants, that contains information (case name, docket number, identity of named plaintiffs, identity of defendants, class periods, a more thorough statement of the basis of the suit) about the filed complaint, and the web address for electronic access to the case file; and

4. The clerk is directed to transmit copies of the Memorandum Opinion and this Order to counsel for the parties.